IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 5, 2008

Charles R. Fulbruge III
Clerk

No. 04-70022

PRESTON HUGHES, III

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, WIENER, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Preston Hughes, III was convicted and sentenced to death in Texas for the 1988 murders of fifteen-year-old Shandra Charles and her three-year-old cousin, Marcell Taylor. Hughes sought federal habeas relief as to both his conviction and sentence. We granted a COA authorizing Hughes to appeal the district court's denial of federal habeas relief as to three claims arising from the sentencing trial. Hughes v. Dretke, 160 F. App'x 431 (5th Cir. 2006) (unpublished). We now AFFIRM the judgment of the district court.

I.

At Hughes's 1989 trial, the State presented evidence that Hughes stabbed both of the victims in the neck and chest, severing their aortas and jugular veins. When the police arrived at the scene, Shandra Charles was still alive. She told a police officer that a man named "Preston" had stabbed her after trying to rape her. The police officers went to an apartment complex near the vacant field in which the victims were found. The manager of the complex gave them a list of tenants. The only tenant named "Preston" was the petitioner. The police officers went to Hughes's apartment around 2:30 a.m. He agreed to accompany the officers to the police station, where he later gave two written statements in which he admitted that he had stabbed both of the victims.

In the first statement, Hughes said that he had been carrying a knife with him because some people had been talking about trying to kill him. He said that, as he was walking home through the vacant field, someone came up behind him and touched him on the shoulder. He said he turned and "just started sticking with the knife." It was dark, and he could not tell who was there, but after he "stuck the first two times," he saw that it was Shandra Charles (Hughes called her "Shawn"). He said, "I was "f***ed up and I just got scared and kept sticking."

In the second statement, Hughes said "Shawn" did not come up behind him and tap him on the shoulder, as he had said in his first statement. Instead, he said that he saw her walking with a little boy. He said that when they met in the middle of the trail through the field, she told him that she was on her way to his apartment to borrow his contact lenses. When he told her that she was not going to wear his contacts, he said that she kissed him, and then started rubbing his crotch. He described in detail the events that occurred next. Suffice it to report that he said heavy sexual activity followed, which became unsatisfactory to Hughes. When "Shawn" demanded money, he refused. She

threatened to accuse him of rape and when she hit him, he pulled his knife and began stabbing her. The little boy with "Shawn" looked up at him and started crying. When the boy ran between Hughes and "Shawn," Hughes stabbed him several times.

At the guilt-innocence phase of the trial, Hughes took the stand in his own defense. He denied that he killed the victims, claimed that he was framed by the police, and testified that he confessed to the crimes only because the police officers struck him and threatened him, causing him to fear for his life. The jury found him guilty of capital murder.

At the punishment phase, the State called Tracy Heggar. She testified that Hughes had raped her in 1985, when she was thirteen years old. She testified further that Hughes had threatened her with a gun in an attempt to prevent her from testifying against him about the rape. The State also presented evidence that, at the time of the murders, Hughes was serving two ten-year probated terms for the aggravated sexual assault and aggravated assault of Heggar.

The defense called several witnesses. Six of Hughes's friends and his mother testified that he was a good-natured, non-violent person. Hughes also testified in his own behalf at the punishment phase. He denied that he raped or threatened Tracy Heggar. He professed sorrow for the deaths of the victims, but denied that he committed the murders. He promised the jury that he would not be violent in the future and asked the jury to spare his life. The jury gave affirmative answers to the special issues on deliberateness and future danger, and, accordingly, the trial court sentenced Hughes to death.

The Texas Court of Criminal Appeals affirmed Hughes's conviction and sentence on direct appeal. Hughes v. State, 878 S.W.2d 142 (Tex. Crim. App. 1993) (opinion on rehearing), cert. denied, 511 U.S. 1152 (1994). On October 21, 1996, Hughes filed an application for state habeas relief. The Texas Court of

Criminal Appeals denied the application based on the trial court's findings of fact and conclusions of law. Ex parte Hughes, No. 45,876-01 (Tex. Crim. App. Sept. 13, 2000). On April 24, 2001, Hughes filed a second state habeas application. The Texas Court of Criminal Appeals dismissed the application as an abuse of the writ under Article 11.071, Section 5 of the Texas Code of Criminal Procedure. Ex parte Hughes, No. 45,876-02 (Tex. Crim. App. Nov. 14, 2001).

The district court denied Hughes's petition for federal habeas relief and denied a COA.

## II.

## A.

Based on our limited, threshold inquiry and general assessment of the merits of Hughes's claims, we granted a COA authorizing Hughes to appeal the denial of habeas relief for the following claims:

(1) Whether the claim is procedurally barred that the jury instructions at the punishment phase of the trial gave the jury no means for considering and giving effect to Hughes's mitigating evidence and, if not, whether the claim has merit;

(2) Whether, at the punishment phase, the jury was improperly allowed to consider a prior conviction that was later overturned on appeal; and

(3) Whether, at the punishment phase, the prosecutor violated Hughes's Fourteenth Amendment rights by suggesting to the jury that Hughes's counsel was callous and morally wrong to put Tracy Heggar, the rape victim who testified as a witness for the State, through the rigors of cross-examination.

The parties filed supplemental briefs on the merits, as well as letter briefs addressing cases decided by our court and the Supreme Court of the United States.

## B.

With respect to the claims adjudicated on the merits in state court, Hughes is not entitled to federal habeas relief unless the state court's adjudication of his claims

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The state court's factual determinations "shall be presumed to be correct", and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The AEDPA standards of review cited above do not apply when we review the denial of a claim on procedural grounds, because there has not been an "adjudication on the merits" by the state court with respect to such a claim. See Valdez v. Cockrell, 274 F.3d 941, 946-47 (5th Cir. 2001). We review the district court's conclusions of law de novo. Nelson v. Quarterman, 472 F.3d 287, 293 (5th Cir. 2006) (en banc), cert. denied, 127 S.Ct. 2974 (2007).

We now turn to consider the claims for which we granted a COA.

## C.

### 1.

Hughes argues that the jury instructions at the punishment phase of his trial did not give the jury a means for considering and giving full effect to the mitigating evidence that he presented. The district court held that this claim is procedurally defaulted because Hughes raised it for the first time in his second state habeas application, which was dismissed by the state court as an abuse of the writ, and that Hughes had not shown cause for the default or actual

prejudice, nor could he demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice. Alternatively, it denied relief on the merits. Because we agree with the district court that the claim is procedurally defaulted, and that Hughes has failed to establish cause and prejudice or a fundamental miscarriage of justice, we do not address the merits of the claim.

A federal habeas claim is procedurally defaulted when the state court has based its rejection of the claim on a state procedural rule that provides an adequate basis for relief, independent of the merits of the claim. Coleman v. Thompson, 501 U.S. 722, 729-32 (1991). To be "adequate" to support the judgment, the state law ground must be both "firmly established and regularly followed" by the state courts. Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (internal quotation marks and citations omitted). There is a presumption "that there is no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the [state court] opinion." Coleman, 501 U.S. at 735 (internal quotation marks and citation omitted).

Federal habeas review of procedurally defaulted claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 753 (internal quotation marks and citation omitted). "Examples of external impediments include active governmental interference or the reasonable

unavailability of the factual or legal basis for the claim." Rodriguez v. Johnson, 104 F.3d 694, 697 (5th Cir. 1997). To demonstrate actual prejudice, the petitioner must show "'not merely that the errors … created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Smith v. Quarterman, 515 F.3d 392, 403 (5th Cir. 2008) (quoting Murray v. Carrier, 477 U.S. 478, 493 (1986)). The fundamental miscarriage of justice exception to the cause requirement of the procedural default doctrine is limited to cases in which the petitioner can show that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense," Dretke v. Haley, 541 U.S. 386, 393 (2004) (quoting Murray, 477 U.S. at 496), or, in the capital sentencing context, the petitioner can show "'by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.'" Id. (quoting Sawyer v. Whitley, 505 U.S. 333, 336 (1992)).

The Texas Court of Criminal Appeals dismissed Hughes's second state habeas application, in which he raised this claim for the first time, as an abuse of the writ, citing Texas Code of Criminal Procedure Article 11.071, Section 5. This court has held that, since 1994, the Texas abuse of the writ doctrine has been consistently applied as a procedural bar, and that it is an independent and adequate state ground for the purpose of imposing a procedural bar. See Kunkle v. Dretke, 352 F.3d 980, 988-89 (5th Cir. 2003); see also Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995) (holding that Texas common law abuse of the writ doctrine has been strictly and regularly applied since 1994 and is an independent and adequate procedural bar); Emery v. Johnson, 139 F.3d 191, 195-96 (5th Cir. 1997) (holding that the Texas statutory abuse of the writ rule, Article 11.071, section 5, is an adequate and independent procedural bar).

Notwithstanding our precedent, Hughes argues that the Texas abuse of the writ doctrine is not an adequate and independent state law ground because federal law was used as guidance for the codification of the Texas common law abuse of the writ doctrine and because the state statute is dependent upon federal law for its application. The Texas statute provides that "a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing" (1) that the claim could not have been presented in a previous application because the factual or legal basis of the claim was unavailable; (2) that "by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt," or (3) that "by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury...." TEX. CODE CRIM. P. Art. 11.071 § 5(a).

The use of federal law as guidance for the enactment and application of the Texas statute cited by the Court of Criminal Appeals as the basis for its rejection of Hughes's claims does not, as Hughes suggests, mean that the court's decision rested primarily on federal law or was interwoven with federal law. No application or interpretation of federal law is required to determine whether a claim has, or could have, been presented in a previous habeas application. The Texas Court of Criminal Appeals did not need to consider or decide the merits of Hughes's constitutional claims in reaching its decision to dismiss those claims as an abuse of the writ pursuant to Article 11.071, Section 5. Furthermore, there is nothing in its perfunctory dismissal of the claims that suggests that it actually considered or ruled on the merits. Accordingly, its decision was independent of federal law for purposes of application of the procedural default doctrine. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

Hughes next argues that he has shown cause and prejudice and a miscarriage of justice sufficient to overcome the procedural bar. As cause for the default, Hughes submits that state habeas counsel was not appointed until a short time before his initial state habeas petition was due, and that the initial state habeas petition was filed in a rushed effort to toll the federal statute of limitations, at approximately the time Article 11.071 was enacted. The district court held that, although the changes in the law were external factors, Hughes had failed to allege how the government had interfered with his ability to discover and investigate his claims, or that his claims were unavailable at the time he filed his direct appeal or his first state habeas application, or why his pleadings could not have been amended to raise the claims.

Notwithstanding the fact that the Texas Court of Criminal Appeals dismissed his Penry[1] claim, asserted in his second state habeas application, as an abuse of the writ, Hughes argues that this court should reach the merits of his claim because Ex parte Robertson, No. AP-74,720 (Tex. Crim. App. Mar. 16, 2005) (unpublished), held that the legal basis for raising a meritorious Penry claim was previously unavailable prior to the Supreme Court's 2004 decisions in Tennard v. Dretke, 542 U.S. 274 (2004), and Smith v. Texas, 543 U.S. 37 (2004) (per curiam). In Tennard and Smith, the Supreme Court rejected this court's "relevance" test for Penry claims. That test "required that petitioner's evidence show (1) a uniquely severe permanent handicap with which the defendant was burdened through no fault of his own and (2) that the criminal act was attributable to this severe permanent condition." Nelson, 472 F.3d at 291 n.2 (brackets, internal quotation marks, and citation omitted). Hughes therefore contends that he satisfies the conditions for filing a subsequent state habeas application. We disagree.

---

[1] Penry v. Lynaugh, 492 U.S. 302 (1989) (Penry I).

In Ex parte Hood, 211 S.W.3d 767 (Tex. Crim. App. 2007), the Texas Court of Criminal Appeals held that Tennard and Smith did not provide a new legal basis for relief. Hood, 211 S.W.3d at 780. Instead, it concluded that such claims could have been reasonably formulated from Penry I and other previously available case law. Id. at 779. The court stated that, "if the legal basis for the claim was recognized by or could have been reasonably formulated from a Supreme Court decision, any federal court of appeals decision, or any state appellate court decision, then the applicant has failed to meet the unavailability exception" under Article 11.071, Section 5. Id. at 775.

With respect to prejudice, Hughes asserts that he should not be held liable for the prejudice that was directly the result of near-simultaneous changes in state law, state appointment of counsel procedures, and attempts to comply with new federal law. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Hughes next argues that the fundamental miscarriage of justice exception should apply because he is actually innocent of killing the victims and because he is actually innocent of the death penalty, inasmuch as there is insufficient evidence to support the jury's findings on the special punishment issues of deliberateness and future dangerousness. We agree with the district court's conclusion that Hughes has not established that he fits within the fundamental miscarriage of justice exception. He has not presented any evidence establishing that he did not commit the murders, and the evidence was more than sufficient to sustain the jury's answers to the special issues.

In sum, we agree with the district court's conclusion that Hughes's Penry claim is procedurally defaulted, and that he has failed to establish cause and prejudice or a fundamental miscarriage of justice, to excuse the default.

2.

Hughes contends next that he is entitled to habeas relief because, during the punishment phase of his trial, the jury improperly considered a prior conviction that was later reversed on direct appeal. As we have mentioned previously, Tracy Heggar was called as a witness for the State at the punishment phase. She testified that Hughes had raped her in May 1985, when she was 13 years old. She testified further that, about a year after sexual assault charges had been filed against him, she saw Hughes when she was on her way to school; he pulled up in front of her and told her that he didn't want her to testify, and then he pulled out a gun and shot it a couple of times. As a result, charges were filed against him for aggravated assault. The State introduced evidence that, at the time of the murders, Hughes was serving two ten-year terms of probation pursuant to deferred adjudications for the aggravated sexual assault and aggravated assault of Tracy Heggar.

At the conclusion of the capital murder trial, the trial court granted the State's motion to revoke Hughes's probation and adjudicate guilt as to both offenses. On appeal, the Texas Court of Criminal Appeals reversed the aggravated assault conviction on the ground that Hughes had not been admonished properly regarding the range of punishment for that offense. Hughes v. State, 833 S.W.2d 137, 140 (Tex. Crim. App. 1992) (en banc) (opinion on rehearing). However, the court found that Hughes had been properly admonished regarding the aggravated sexual assault charge and affirmed that conviction. Id. at 140.

On direct appeal from the capital murder conviction and death sentence, the Court of Criminal Appeals held that the admission of evidence of the aggravated assault conviction was error, but that the error was harmless beyond a reasonable doubt. The court explained:

> In this case, the State not only admitted the judgment [of conviction for aggravated assault], but they also called [Heggar] to the stand. She testified

11

that one afternoon in the summer between her eighth and ninth grade school years [Hughes] came over to her mother's apartment. She answered the door, and spoke to [Hughes], whom she knew through his cousin. As she was preparing to go to the beach that afternoon and had to change clothes, she said goodbye and began [to] shut the door. [Hughes] put his foot in the door and barged inside. [Heggar] then recounted the details of how [Hughes] raped her. [Hughes] was subsequently arrested for aggravated sexual assault.

Between the time of his release on the sexual assault charge and his trial, [Hughes] allegedly approached [Heggar], threatened her if she testified, and when she turned to run, fired a gun at her. [Hughes] took the stand in this cause and testified that neither the rape nor the assault ever took place. Most of the testimony concerning this issue involved not the assault charge but rather the question of whether [Hughes] raped [Heggar], as well as another rape charge in the State of New York. The admission of the two convictions tend[s] to corroborate [Heggar's] version of the story. However, the incremental harm of the admission of [Hughes's] deferred adjudication for the aggravated assault is negligible when compared to the admission of [Hughes's] deferred adjudication for aggravated sexual assault [of] a child. If the jury believed [Heggar] was credible and believed her story and if that belief was the result of the deferred adjudication, there is no incremental change in that belief based on the presence or absence of the second deferred adjudication documents [relating to the aggravated assault].

Accordingly, the admission of [Hughes's] judgment for aggravated assault is harmless beyond a reasonable doubt in this instance....

Hughes v. State, 878 S.W.2d at 156-57 (opinion on rehearing).

Hughes raised this claim again in his first state habeas application. The state habeas court found that the claim was procedurally barred because Hughes

12

failed to raise a timely objection to the evidence at trial. The court further concluded that the issue was not cognizable on habeas because the claim had already been raised and rejected on direct appeal. Alternatively, the state habeas court held that the claim was without merit for the same reason that it was rejected on direct appeal -- that the evidence of the aggravated assault conviction was harmless beyond a reasonable doubt. Hughes asserted the claim again in his second state habeas application, which the Texas Court of Criminal Appeals dismissed as an abuse of the writ.

Hughes is entitled to federal habeas relief on this claim "only if the [Texas Court of Criminal Appeals] applied harmless-error review in an 'objectively unreasonable' manner." Mitchell v. Esparza, 540 U.S. 12, 18 (2003) (citations omitted). "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht [v. Abrahamson, 507 U.S. 619 (1993)]." Fry v. Pliler, 127 S.Ct. 2321, 2328 (2007). In Fry, the Supreme Court stated:

> Given our frequent recognition that [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] limited rather than expanded the availability of habeas relief, it is implausible that, without saying so, AEDPA replaced the Brecht standard of actual prejudice with the more liberal AEDPA/Chapman standard which requires only that the state court's harmless-beyond-a-reasonable-doubt determination be unreasonable. That said, it certainly makes no sense to require formal application of both tests (AEDPA/Chapman and Brecht) when the latter obviously subsumes the former.

Id. at 2327 (internal quotation marks and citations omitted). Accordingly, in assessing the reasonableness of the state court's application of harmless error review, we must determine whether the erroneous admission of Hughes's aggravated assault conviction had a substantial and injurious effect on the

verdict at the punishment phase. We conclude that it did not, and that the state court's application of harmless error review is neither contrary to, nor an unreasonable application of, clearly established federal law. As the state court observed, Heggar and Hughes both testified. Most of Heggar's testimony concerned the aggravated sexual assault. If the admission of Hughes's conviction for aggravated sexual assault caused the jury to believe Heggar's testimony, it is not likely that the erroneous admission of his conviction for aggravated assault had any incremental effect on the jury's determination of her credibility.

Hughes's reliance on Johnson v. Mississippi, 486 U.S. 578 (1988), and Brown v. Sanders, 546 U.S. 212 (2006), is misplaced. In Johnson, the Supreme Court invalidated a death sentence where the "sole evidence" supporting one of the aggravated circumstances that led to the imposition of the death sentence was a prior felony conviction that was later reversed. Id. at 581. Hughes's aggravated assault conviction was neither the strongest nor the sole evidence of his future dangerousness. Furthermore, the jury in Johnson heard no evidence of the conduct underlying his prior felony conviction that was later reversed. Id. at 585-86. Here, in contrast, Heggar testified about the details forming the basis for both the aggravated sexual assault and aggravated assault convictions.

In Brown v. Sanders, the Court held that "[a]n invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process unless one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances." 546 U.S. at 220. Moreover, the facts and circumstances underlying the subsequently invalidated conviction were properly before the jury through Tracy Heggar's testimony.

Because the state court's conclusion that the error was harmless was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court, we affirm the district court's denial of habeas relief as to this claim. We now turn to the final claim for which we granted a COA.

3.

Hughes argues that the prosecutor violated his rights under the Fourteenth Amendment by criticizing Hughes's counsel for cross-examining Tracy Heggar. Specifically, Hughes points to the following portion of the prosecutor's closing argument at the punishment phase:

| STATE: | ... I suggest to you that the testimony of Tracy Heggar alone is enough to put the needle in this man's arm. And for that little girl to be brought down here and for [defense counsel] to put her on trial again is not right. |
|---|---|
| DEFENSE: | Objection. He put her on the stand, Your Honor. I object to him raising the issue we've done something wrong by protecting our client's rights, by asking a few simple questions on cross examination of the witness he put on the stand. I object to it. |
| STATE: | I apologize. I don't want to insinuate ... |
| DEFENSE: | I don't want his apology. |
| STATE: | I'm not saying that [defense counsel] has done anything wrong. |
| DEFENSE: | I object, Mr. Prosecutor. I have made an objection. |

COURT:          The objection will be overruled.

STATE:          They have done nothing wrong. They're trying to protect their client. It's their job. It doesn't mean it's the right thing to do.

DEFENSE:        I object to him striking at my client over the shoulders of counsel by accusing us of doing something that ain't the right thing to do which was clearly within the rules, would have been malpractice if we hadn't done it. I request that the jury be instructed to disregard counsel's remarks.

COURT:          The objection will be sustained. Jury will disregard the last remark of the prosecutor and not consider it for any purpose whatsoever.

DEFENSE:        I would move for further relief, Your Honor.

COURT:          That will be denied.

On direct appeal, the Texas Court of Criminal Appeals held that the argument was improper and that the trial court erred by overruling the initial objection. However, it concluded that the error was cured by the prompt instruction to disregard the second comment:

> To be proper, jury argument must constitute either (1) a summation of the evidence, or (2) a reasonable deduction from the evidence, or (3) a response to an opponent's argument, or (4) a plea for law enforcement. Gomez v. State, 704 S.W.2d 770, 771 (Tex. Crim. App. 1985). While we agree that the prosecutor's arguments were not totally proper, we disagree with [Hughes's] contention that a reformation of his sentence is required. This argument is unlike that made in Gomez, where the prosecutor implied that

16

> the defense attorney was willing to suborn perjury. Id. at 772. In the instant case, the trial court certainly erred in overruling [Hughes's] initial objection. The second comment, however, came almost immediately after the initial remark. Even though the trial judge told the jury to disregard only the "last remark," we read the record to indicate that the trial judge realized his error and promptly instructed the jury to disregard the prosecutor's argument. [Hughes] admits that the second remark was even "more direct." We conclude that any error associated with the overruling of [Hughes's] objection to the initial remark was cured by the prompt instruction to disregard the second remark and, accordingly, overrule [Hughes's] points of error ten and eleven.

Hughes v. State, 878 S.W.2d at 157-58 (opinion on rehearing).

Improper remarks by a prosecutor "are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair." Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002). "Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or ... the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." Id. at 245 (internal quotation marks and citation omitted). "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). A curative instruction may reduce the risk of prejudice to the defendant. See Ward v. Dretke, 420 F.3d 479, 499 (5th Cir. 2005).

The state court's decision -- that the improper argument was not so egregious as to render the entire trial fundamentally unfair, and that the prompt curative instruction significantly reduced the risk of unfair prejudice -- is neither contrary to, nor an unreasonable application of clearly established federal law

17

as determined by the Supreme Court.  We therefore affirm the district court's denial of habeas relief for this claim.

### III.

For the foregoing reasons, the judgment of the district court denying Hughes's petition for federal habeas relief is

AFFIRMED.