

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-75,370

**EX PARTE CHARLES DEAN HOOD, Applicant**

## ON RECONSIDERATION ON THE COURT'S OWN MOTION OF AN APPLICATION FOR A WRIT OF HABEAS CORPUS FROM COLLIN COUNTY

**KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.**

The plurality ignores the language of Texas Code of Criminal Procedure Article 11.071, Section 5(a), posits a false "conundrum," and relies upon cases that are distinguishable. Because Article 11.071 requires that Hood's application be dismissed, I dissent.

Under Article 11.071, the merits of a subsequent habeas application may be considered only under limited circumstances.[1] At issue here is whether the legal basis of

---

[1] T EX. CODE CRIM. PROC. art. 11.071 § 5(a).

Hood's claim was "unavailable" on the date a previous application was filed.[2] The Legislature has specifically defined what it means for a legal basis to be "unavailable":

> For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis was not recognized by or could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.[3]

We are not at liberty to ignore this definition. Addressing a prior legislative scheme that prohibited the consideration of late-filed habeas applications, we emphasized our duty to enforce the laws written by the Legislature:

> Our oaths are to uphold the constitutions and laws of this country and state; they are not a commission to do what a majority of us think is fair. This law was passed by the legislature and approved by the governor, in accordance with our constitutional form of government. The law is clear: this court shall dismiss this application because it was filed late. If the law is barbarous, the legislature should repeal it or the governor should commute or pardon those who are subjected to it. In the meantime, we must follow it.[4]

The plurality does not purport to explain how Hood has shown that the legal basis of his current claim was not available when he filed his previous application because it cannot. Notably, there is nothing but silence from Judge Price, who agreed with our disposition of this case on original submission.[5] Judge Price's contrary opinion today is the sole reason that

---

[2] TEX. CODE CRIM. PROC. art. 11.071 § 5(a)(1).

[3] TEX. CODE CRIM. PROC. art. 11.071 § 5(d).

[4] *Ex parte Smith*, 977 S.W.2d 610, 611 (Tex. Crim. App. 1998).

[5] *Ex parte Hood*, 211 S.W.3d 767, 770 (Tex. Crim. App. 2007).

yesterday's minority view is now the law.

*Penry II*, decided in 2001,[6] was the first time that the United States Supreme Court ever said that a nullification instruction would not satisfy the dictates of *Penry I*.[7] *Penry II* was decided after applicant's direct appeal, where he had raised a *Penry* challenge, but before applicant filed his second habeas application, where he did not raise a *Penry* challenge. Unquestionably, then, Hood's current legal challenge could have been "reasonably formulated" from the Supreme Court's decision in *Penry II*.

The plurality contends that we can "forgive" Hood for not recognizing that he had a valid *Penry* claim, "because we had not yet recognized that fact ourselves."[8] But whether this Court had recognized the validity of a claim is not the test under Article 11.071, Section 5(a)(1); the test, in part, is whether the claim was recognized by a decision from any court enumerated in the statute. Even if the validity of a claim is not recognized by this Court, it is considered "available" under the habeas statute if it is recognized by a decision from the United States Supreme Court, a federal appeals court, or a Texas state appeals court.

The test also includes whether the claim could have been "reasonably formulated" from a decision of this Court or one of the other courts mentioned above. There are many claims that can be reasonably formulated that we do not yet recognize as valid. We routinely

---

[6] *Penry v. Johnson (Penry II)*, 532 U.S. 782 (2001).

[7] *Penry v. Lynaugh*, 492 U.S. 302 (1989); *see Penry II*, 532 U.S. at 798-800.

[8] Plurality op. at 18 n.51.

grant petitions for discretionary review to consider such claims. When the plurality says that we should not expect Hood to be "more prescient than ourselves,"[9] it reveals its confusion: The issue is whether a claim is colorable to the required degree (recognized by or can be reasonably formulated from a Supreme Court, federal circuit court, or Texas appellate court decision), not whether we currently recognize it as the controlling law in Texas. This is why we were correct on original submission when we said, "Another point that deserves emphasis is that lack of recognition is not enough to render a legal basis unavailable. If the legal basis could have been reasonably formulated from a decision issued by a requisite court, then the exception is not met."[10]

The plurality also suggests that we can "forgive" Hood's dereliction because of our decision in *Ex parte Smith*,[11] which held that an unambiguous nullification instruction (such as the one given here) was sufficiently distinguishable from the instruction given in *Penry II* so as to satisfy *Penry I*.[12] There are two reasons that our decision in *Smith* could not have rendered applicant's *Penry* claim "unavailable." First, *Smith* was not a United States Supreme Court decision. Although *Smith* had interpreted *Penry II* in a manner that was adverse to Hood, the Supreme Court had not yet had occasion to address that interpretation.

---

[9]  *Id.*

[10]  *See Ex parte Hood*, 211 S.W.3d at 775.

[11]  132 S.W.3d 407 (Tex. Crim. App.), *rev'd*, *Smith v. Texas*, 543 U.S. 37 (2004).

[12]  *See* Plurality op. at 18 n.51; *see also Smith*, 132 S.W.3d at 416-17.

So the possibility remained that the Supreme Court could disagree with our interpretation. And as long as that possibility remained, then, under the habeas statute, there remained a Supreme Court decision—*Penry II*—from which Hood's claim could have been reasonably formulated.

Second, our decision in *Smith* was not final when Hood filed his application. The decision was only a month old, leaving the possibility open that Smith could file a petition for writ of certiorari with the Supreme Court of the United States,[13] have that petition granted, and ultimately obtain a reversal. That is precisely what happened.[14] By distinguishing *Penry II* (as not applicable to unambiguous instructions) in a published opinion, our decision in *Smith* in fact highlighted the issue, so that no one could rely on a lack of notice as to the issue's existence. And because it was the first time that *Penry II* had been distinguished in that fashion, and the decision was still subject to Supreme Court review, it was clearly a live issue that any person filing a capital habeas application should have taken into account.

The plurality contends that our scheme and the federal scheme create a "conundrum" because "a death-row inmate must argue in this Court that *Tennard*, *Smith*, *et al.* announced new law, but he must argue that those same cases simply reiterated clearly established law

---

[13] U.S. SUPREME CT. R. 13(1) ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.").

[14] *See Smith v. Texas*, 543 U.S. 37 (2004).

once he arrives in federal court."[15] As a result, the plurality concludes that Hood "is entitled to relief in one court or the other."[16] Even if this were true, that does not give us license to ignore a controlling state statute that requires the dismissal of the state habeas application. That an applicant may inevitably receive relief on federal habeas is never a reason to ignore the requirements of 11.071. If my stance seems harsh or unfair, it should be remembered that only the Legislature can remedy the situation. This case provides yet another egregious example of judges legislating from the bench, ignoring what the majority of our citizens, through their various state representatives, have declared is the law of the state.

Nevertheless, the so-called "conundrum" does not really exist. The statutory requirement that a state habeas claim be "new" applies only to subsequent applications.[17] If a claim is filed in an initial state habeas application, both the state and federal courts may consider a claim based on long-standing, firmly established federal constitutional law. Ineffective assistance of counsel claims, for example, tend to be of this variety.

Even if we are just considering subsequent applications, a claim could easily qualify as "new" in state habeas court and yet be subject to consideration under the "unreasonable application of clearly established law"[18] standard in federal court. This would occur if the

---

[15] Plurality op. at 16.

[16] *Id.* at 19.

[17] *See* TEX. CODE CRIM. PROC. art. 11.071 § 5.

[18] *See* 28 U.S.C. § 2254(d)(1).

Supreme Court announced a new rule of constitutional law, a death-row inmate raised a claim based on this new rule in a subsequent state habeas application that was his first application filed after the new rule was announced, and this Court held against the inmate in an opinion that unreasonably applied that newly established rule.

Further, as we explained in our opinion on original submission, the interplay between the law of cognizability and the subsequent application requirements of article 11.071, Section 5, can result in an issue becoming "new" as to a particular applicant even if it is not "new" in a general sense.[19] Some court-made rules can affect the cognizability of a claim in an initial state habeas proceeding, and one such rule is implicated here: Hood would have been barred from raising his *Penry* claim in his first habeas application because a rule procedurally barring that claim prevents the relitigation of claims on habeas that were raised and rejected on direct appeal.[20] In such a case, direct appeal, and ultimately a petition for writ of certiorari from our decision in that direct appeal, would be an available avenue for the adjudication of the claim. With the advent of *Penry II*, however, habeas corpus also became an avenue for litigating Hood's *Penry* claim because a change in the law is an exception to the procedural bar.[21]

For that reason, the plurality is just plain wrong in saying that our opinion on original

---

[19] *See Hood*, 211 S.W.3d at 776-77.

[20] *See Ex parte McFarland*, 163 S.W.3d 743, 748 (Tex. Crim. App. 2005).

[21] *Ex parte McFarland*, 163 S.W.3d at 748; *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994).

submission took a position inconsistent with the Supreme Court's later decision in *Abdul-Kabir v. Quarterman*[22] in suggesting that "*Penry II* announced new law."[23]  We expressly declined to decide whether *Penry II* announced "new" law "in the abstract" but held that it was "new" as to the applicant because a nullification claim had been resolved against him in a prior proceeding.[24]  So even if our holdings before *Penry II* were "unreasonable applications of clearly established law,"[25] it was still true that a *Penry* claim could not have been "reasonably formulated" by Hood while it remained non-cognizable.  Even if *Penry II* did not establish "new" law in a general sense, it was a new legal authority for cognizability purposes and was also a new "Supreme Court decision" from which Hood's claim could have been "reasonably formulated."  Had Hood raised his claim in the first application filed after *Penry II* was handed down, then he would have satisfied Article 11.071, Section 5.  This rule of showing unavailability by exhaustion, articulated on original submission,[26] is not a hollow one: In *Ex parte Martinez*, for example, we followed this rule, found that the claims in that case were not barred by Section 5, and granted relief.[27]

---

[22]  550 U.S. 233 (2007).

[23]  *See* Plurality op. at 18.

[24]  *See Hood*, 211 S.W.3d at 776.

[25]  *See* 28 U.S.C. § 2254(d)(1).

[26]  *See Hood*, 211 S.W.3d at 777.

[27]  233 S.W.3d 319, 322-23 (Tex. Crim. App. 2007).

If Hood faces a "conundrum," it is because, unlike other habeas applicants, he chose to file a pro-se habeas application without raising an available *Penry* claim. This is exactly the kind of behavior that the Legislature specifically sought to prohibit by enacting Section 5(a). But no "conundrum" exists for Hood because he is simply not entitled to relief in any forum. The plurality's contention that he is entitled to relief either in this Court or federal court is wrong because a dismissal under Article 11.071, Section 5 would be an adequate and independent state ground that would bar relief in federal court.[28]

Finally, the plurality relies upon several prior, unpublished decisions for the proposition that other litigants have received relief under similar circumstances, and it concludes that we should treat Hood like those litigants.[29] But those cases are distinguishable. The habeas applicants in *Davis* and *Robertson* did raise a *Penry* claim in their first post-*Penry II* applications.[30] The same is true in the more recent cases cited by the plurality today.[31] In some, but not all of the cases, the applicant also raised the claim on

_____

[28] *See Hughes v. Quarterman*, 530 F.3d 336, 341-42 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 2378 (2009); *see also Kunkle v. Texas*, 543 U.S. 1039, 1039-1040 (2004) (Stevens, J., concurring); *Moore v. Texas*, 535 U.S. 1044 (2002) (Scalia, J., dissenting).

[29] *See* Plurality op. at 14 n.41, 20.

[30] *See Hood*, 211 S.W.3d at 780, 780 n.56 (distinguishing *Ex parte Robertson*, No. AP-74,720 (Tex. Crim. App. Mar. 16, 2005) (not designated for publication) and *Ex parte Davis,* No. WR-40,339-06 (Tex. Crim. App. Mar. 29, 2006) (not designated for publication)).

[31] *See Ex parte Buntion*, No. AP-76,236 (Tex. Crim. App. Sept. 30, 2009) (not designated for publication) (prior application filed in 1996); *Ex parte Rachal*, No. WR-60,394-02 (Tex. Crim. App. Sept. 23, 2009) (not designated for publication) (prior application filed in 1997); *Ex parte Jones*, No. AP-75,896, 2009 WL 1636511 (Tex. Crim.

direct appeal and in an initial habeas application.[32]  Although our opinion on original

submission did not decide whether *Penry II* made nullification claims newly available in

general under article 11.071, Section 5, some of our subsequent unpublished decisions are

consistent with doing so.  Such a view is entirely understandable because *Penry II* was the

first time the Supreme Court said that a nullification instruction was insufficient to satisfy

*Penry I*'s dictates.  But until today, all of our cases were also consistent with the view that

an applicant could not challenge a nullification instruction if the applicant failed to do so in

a previous application filed after *Penry II*.

Because the Court's decision is contrary to our state habeas statute, I dissent.

DATE DELIVERED: February 24, 2010
PUBLISH

---

App. June 10 2009) (not designated for publication) (while not setting forth the procedural history about prior habeas applications, internal court records show that both prior applications were filed in 1997).

[32] *See Hood*, 211 S.W.3d at 780 (outlining *Robertson*'s procedural history and indicating that Robertson raised his claim on direct and appeal and his initial habeas application); *Ex parte Buntion*, No. WR-22,548-02 (Tex. Crim. App. Nov. 5, 2003) (not designated for publication) (internal court records indicate that Buntion raised his claim on direct appeal and in his initial habeas application); *Ex parte Jones*, No. 2009 WL 1636511 at *3 (summarizing State's allegations and noting that Jones did not raise his claim on direct appeal or in his initial application); *Rachal v. State*, 917 S.W.2d 799 (Tex. Crim. App. 1996) (claim not raised on direct appeal); *Ex parte Rachal*, WR-60,394-01 (Tex. Crim. App. Mar. 23, 2005) (not designated for publication) (claim not raised in initial habeas application); *Ex parte Davis*, No. AP-76,263, 2009 WL 3839065 at *4 n.26 (Tex. Crim. App. Nov. 18, 2009) (Keller, P.J. dissenting) (not designated for publication) (referring to trial court's findings).