# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 26, 2012

No. 09-70028

Lyle W. Cayce
Clerk

WILLIE TERION WASHINGTON,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
4:99-CV-140 & 4:07-CV-721

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Willie Terion Washington, a black Texas death row inmate, was convicted
of murder in 1986. At voir dire, the prosecutor struck all the minority jurors to
empanel an all-white jury. Washington filed a state petition for writ of habeas

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-70028

corpus which was denied.  Some years later, Washington received copies of the prosecutor's notes from voir dire which he claims prove racial discrimination in the seating of his jury.  He then filed a subsequent petition for habeas which was denied under Texas's abuse of the writ statute.  The United States District Court rejected his appeal. Before this court is whether the Texas Court of Criminal Appeals ("TCCA") based its decision on the independent and adequate state ground contained within the procedural rule, or whether the decision was intertwined with federal law.  Also before this court is an application for a Certificate of Appealability ("COA"). We AFFIRM the ruling of the District Court and DENY Washington's application for a COA.

## FACTS AND PROCEEDINGS

A.    Washington's Habeas Corpus Claims

Washington was convicted of capital murder and sentenced to death in November of 1986.  The facts of his crime are not before this court.[1]  At voir dire, the prosecutor peremptorily excused five minority jurors and an all-white jury was empaneled without a *Batson* challenge from Washington's attorney.  (Blue Br. 18).  During voir dire, the prosecutor wrote down letters next to the names

---

[1]  The TCCA has previously summarized the facts of this case:

The record reflects that on December 19, 1985, Yemane Kidane and Kifelmariam Tareh were working in Mike's Food Market of which Kidane was a part owner. At approximately 8:30 p.m. that evening, [Washington] entered the store and went to the back where Tareh was stocking the cooler with beer. Holding Tareh at gunpoint, [Washington] approached the register where Kidane was working and said, "Give me all the money. I'm going to hurt you." Kidane gave [Washington] between seventy and one hundred dollars in cash and some food stamps. [Washington] allegedly then moved Tareh to the right one step, shot Kidane in the jaw, shot Tareh in the head killing him and then left the store. Kidane, who was not killed by the shot to his jaw, then ran out of the store and fired two shots into the air from a gun that he had in his pocket. Kidane then went to a lounge next to the food market to ask for help in getting the police and an ambulance. Kidane later identified [Washington] as the alleged perpetrator. Kidane stated he did not know [Washington's] name, but he recognized him because he came into the food market on a daily basis.

*See Washington v. State*, 771 S.W.2d 537, 539 (Tex. Crim. App. 1989).

No. 09-70028

of venire members on jury questionnaires to indicate the potential juror's race (such as a 'b' for a black venire person). (Blue Br. 16). Washington's direct appeal to the Texas Court of Criminal Appeals was denied, as was certiorari to the United States Supreme Court. (Blue Br. 1-2). He filed a petition for writ of habeas corpus in state court in 1990. In 1997, the 180th District Court of Harris County, Texas denied relief. Washington filed a second supplemental petition which was denied by the TCCA in early 1998. (Blue Br. 2).

Following denial of relief, Washington filed a federal habeas petition and an amendment to the petition in 1999. (Blue Br. 3). In 2001, Texas provided Washington with copies of the juror questionnaires used in voir dire as well as evidence of "criminal records of key prosecution witnesses." (Blue Br. 3). Washington alleges the notations on the questionnaires are "racist notations" which establish that Washington's attorney rendered ineffective assistance by not raising a *Batson* challenge. (Supp. Br. 24-25). Based on this newly discovered evidence, Washington filed a second amended petition for a writ of habeas corpus. (Blue Br. 3). The District Court for the Southern District of Texas dismissed the petition in 2001 so that Washington could pursue these two claims in state court. (Blue Br. 3).

Washington's successive habeas application based on ineffective assistance was dismissed by the TCCA in 2002 stating, "[t]he remaining claims fail to satisfy the requirements of Sec. 5 and are accordingly dismissed." (TCCA Order No. 35,410-02).[2] The TCCA denied a subsequent application for a writ of habeas corpus in February of 2007. Washington then filed a petition for writ of habeas corpus in federal court. (Blue Br. 4).

---

[2] Section 5 of the Texas Code of Criminal Procedures, Article 11.071 sets forth the limited circumstances in which the court may consuder a subsequent habeas application. *See* Tex. Code Crim. Proc. Art. 11.071.

3

No. 09-70028

The district court explained "the TCCA dismissed the claim under Texas's abuse of the writ statute." (Opinion 3). The question was thus whether the dismissal was based on a rejection of Washington's constitutional ineffective assistance argument, or whether it was based on an independent and adequate state ground, namely the abuse of the writ by successive petitions. The district court concluded "[t]here is thus no reason to believe that this dismissal by the TCCA, like the dismissal at issue in *Hughes*, rested on anything other than an independent and adequate state ground." (Opinion 7). However, because "reasonable jurists could disagree whether the TCCA decision in this case [finding Washington's state habeas claim procedurally defaulted under Tex. Crim. Pro. art. 11.071 § 5], in light of Washington's later-discovered evidence, was intertwined with federal law," the district court granted a certificate of appealability on the independent and adequate state ground issue. (Opinion 8).

B.    Section 5 of Texas Rules of Criminal Procedure

The Texas Code of Criminal Procedure, article 11.071 Section 5 permits subsequent application for a writ of habeas corpus in three limited circumstances.

> (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> > (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
> >
> > (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

4

No. 09-70028

(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

Tex. Code Crim. Proc. Art. 11.071 § 5. Under each subsection, the plaintiff must allege specific facts to establish that (1) the factual or legal basis for the claim were not previously available; (2) a United States Constitutional violation was the but-for cause of the jury's guilty finding; or (3) a Constitutional violation was the but-for cause of the jury's answers to the special issues which resulted in the death penalty. *Id.* Barring these exceptions, the TCCA will dismiss a petition as procedurally defaulted.

## STANDARD OF REVIEW

The parties dispute the nature of the case. Washington claims this case raises a review of a claim for ineffective assistance of counsel. Texas correctly articulates that this is a review of a denial of habeas corpus. (Red Br. 15). The district court made no findings of fact or conclusions of law regarding the effectiveness of Washington's trial counsel but concluded "that the TCCA found Washington's claim procedurally defaulted under an independent and adequate state rule of procedure." (Opinion 8). The only legal conclusion of the district court was that the Texas abuse of the writ statute contained an adequate and independent state ground on which the TCCA based its dismissal of Washington's subsequent petition.

This court reviews facts found by the district court for clear error and the district court's legal conclusions *de novo. Virgil v. Dretke*, 446 F.3d 598, 604-05 (5th Cir. 2006); *Ward v. Dretke*, 420 F.3d 479, 486-87 (5th Cir. 2005); *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004) ("In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de*

No. 09-70028

*novo*, applying the same standards to the state court's decision as did the district court.").

## DISCUSSION

1.     TCCA Dismissal

The issue before us is whether the TCCA dismissed Washington's petition based on an adequate and independent state law ground.  If so, we are barred from reviewing the state court's judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The TCCA dismissed Washington's claim because it did not "satisfy the requirements of Sec. 5 [of Art. 11.071]."  (Order 2).  Washington raises two contentions.  First, he contends that the TCCA's order does not clearly indicate that the decision was based on an adequate and independent state law ground and thus the presumption should be that it was not.  Second, he alleges that the TCCA did not base its opinion on whether the facts underlying a potential *Batson* challenge were unavailable at the time of his first habeas petition, but rather on a finding that his application did not make out a *Batson* violation claim that was prima facie meritorious.

a.     State or Federal Law Presumption

Washington contends that the TCCA failed to include a plain statement that its dismissal under §5 was based on adequate and independent state grounds.  He reads *Michigan v. Long* and its progeny to require state courts explicitly to state their decisions rest on adequate and independent state law ground in order to avoid a presumption that the decision is either based or relied on federal law.  *See Michigan v. Long*, 463 U.S. 1032 (1983)*;* (Blue Br. 18).  Texas correctly points out that Washington's brief was filed before *Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010), and thus argues that in the absence of a clear statement that the state court relied on federal law, this court should presume that an adequate and independent state law ground was the basis for the decision.  (Red Br. 23-24).

6

This court is procedurally barred from hearing appeals from denial of state habeas where the state court based its decision on an adequate and independent state law ground. This rule is derived from the Supreme Court's opinion in *Long* which held:

> when, as in this case, a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.

*Long*, 463 U.S. at 1040-1041. *Long* has been refined by this circuit in the context of the Texas abuse of the writ doctrine, most recently in *Rocha*. *See also Balentine v. Thaler*, 626 F.3d 842 (5th Cir. 2010).

In *Rocha*, this court explained that if the TCCA's decision was based on unavailability, the procedural bar for federal review would hold. 626 F.3d at 835. If, however, "the CCA determines that the claim was unavailable but that the application does not make a prima facie showing of merit, a federal court can review that determination." *Id.* We have held that a claim was procedurally barred when the TCCA issued a boilerplate abuse-of-the-writ order dismissing a successive habeas application because "no application or interpretation of federal law is required to determine whether a claim has, or could have, been presented in a previous habeas application." *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008). Further, there was "nothing in [the TCCA's] perfunctory dismissal of the claims that suggest[ed] that it actually considered or ruled on the merits." *Id.* Thus, "we are required to presume that a state-court habeas decision does not rest on an independent state-law ground only if we first determine that the state-court decision we are reviewing 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law.'" *Rocha*, 626 F.3d at 836 (quoting *Coleman*, 501 U.S. at 735). "A CCA decision fairly appears

to rest on state law if it dismisses a subsequent habeas application under § 5(a)(1) because the application does not raise a claim that was factually or legally unavailable." *Id.* at 837. Thus, our presumption that the TCCA dismisses claims on state law grounds is only undermined if the opinion actually implicates federal law.

The TCCA order did not specify whether its dismissal was based on state law or had some relationship to federal law. The presumption that the order rests on adequate state law thus stands subject to our consideration of whether the TCCA's decision "fairly appears to rest primarily" on a determination that Washington's *Batson* challenge was not prima facie meritorious.

> b.     Availability of *Batson* at First Habeas Application

Washington claims that the TCCA necessarily dismissed his claim based on the merits of his *Batson* challenge because the evidence of racial discrimination by the prosecutor at voir dire was not available at the time of his first habeas petition. (Blue Br. 30-31). He claims he "first became aware of the prosecutor's invidious discriminatory intent when the state's jury questionnaires were provided *for the first time* in 2000." (Blue Br. 30). Because this specific evidence was not previously available, Washington alleges that his *Batson* challenge was unavailable at the time of his first habeas petition. (Blue Br. 30-32). Texas claims Washington's ineffective assistance claim was previously available even without the jury questionnaires. (Red Br. 33-35). Texas quotes the district court to argue that the facts necessary to raise an ineffective assistance claim for failure to allege a *Batson* violation–that the prosecutor used peremptory challenges to remove black venire members and that his trial counsel did not object–were available at the time of Washington's initial state habeas application. (Red Br. 34).

We have held that a determination of whether a TCCA decision was based on the unavailability or merits of the claim follows a sequential pattern.

No. 09-70028

> [T]he two requirements of § 5(a)(1) should be applied sequentially. The CCA first examines whether the factual or legal basis of the claim was unavailable at the time of the original application. Only if the applicant can surmount the unavailability hurdle does the CCA proceed to ask whether the application makes out a claim that is prima facie meritorious . . . If an applicant fails to satisfy the unavailability requirement, the § 5(a)(1) inquiry is over, and no merits determination takes place.

*Rocha*, 626 F.3d at 834. "No application or interpretation of federal law is required to determine whether a claim has, or could have, been presented in a previous habeas application." *Hughes*, 530 F.3d at 342. Thus, we must determine whether Washington's claim of ineffective assistance for failure to raise a *Batson* challenge at voir dire was available prior to the discovery of the jury questionnaires–whether the TCCA dismissed Washington's claim for unavailability (state law) or on its merits (federal law).

Such analysis does not require checking "our common sense at the door when we read an opinion of the CCA with an eye toward ascertaining its decisional basis. . . . When the CCA dismisses a successive habeas application on the ground that it does not satisfy § 5(a)(1), we can–and should–read its order of dismissal to determine which of the two elements of § 5(a)(1) was the basis of the court's dismissal." *Rocha*, 626 F.3d at 837. We may consider arguments or theories that support or could support the state court's decision. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); (Red Br. 17).

*Batson* challenges require a three part test to determine if peremptory challenges were used in a discriminatory manner.

> First, the defendant must make a prima facie showing that the prosecutor's use of peremptory challenges excluded members of a certain race from serving on the jury. Second, once the defendant makes that prima facie showing, the burden shifts to the state to provide a neutral explanation for the strikes related to the particular case being tried. Once the state offers an explanation for its challenges, the trial court must determine whether the

defendant has established purposeful discrimination in the jury selection process. The ultimate burden of persuasion stays with the defendant throughout.

*Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) (internal citations omitted). Washington alleges that he was not able to establish a prima facie case prior to the discovery of the jury questionnaires. (Blue Br. 30-31). To establish a prima facie case:

> a defendant: (1) must show that . . . the prosecutor has exercised peremptory challenges to remove members of [a cognizable racial group] from the venire; (2) is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate; and (3) must show that these facts and circumstances raise an inference that the prosecutor exercised peremptory challenges on the basis of race.

*Price v. Cain*, 560 F.3d 284, 286 (5th Cir. 2009). This court has held that the facts required to raise an inference are a "light burden." *Id.* at 287. Thus, we must determine whether, but for the evidence that the prosecutor indicated potential jurors' race on the questionnaires, Washington could have established a prima facie case.

At Washington's jury selection, the prosecutor exercised peremptory challenges to remove black and Hispanic venire members which resulted in an all-white jury. (Blue Br. 18). The questionnaires were not necessary to make this showing. Second, the prosecutor's behavior in removing black and Hispanic venire members to leave a completely white jury could certainly "constitute[] a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Price*, 560 F.3d at 286 (quoting *Batson v. Kentucky*, 479 U.S. 79, 96 (1986)). Finally, the removal of non-white jurors from the venire raises "an inference that the prosecutor exercised peremptory challenges on the basis of race." *Id.* The actions at voir dire, even without the questionnaires would constitute the time Washington "first became aware of the prosecutor's invidious

discriminatory intent," (Blue Br. 30), and thus provided sufficient evidence to raise a *Batson* challenge.    Even assuming, *arguendo*, that the jury questionnaires strengthen Washington's prima facie case, they are unnecessary to overcome the light burden this circuit requires a party to show a prima facie case for the first step of a *Batson* claim.

The TCCA based its dismissal on the fact that Washington's attorney did not need the questionnaire evidence which tends to show racial discrimination at voir dire, but could have raised a *Batson* challenge based on the race-based strikes at the trial.  The failure to raise a *Batson* challenge at voir dire may have been ineffective assistance.    However, Washington's failure to raise the ineffective assistance claim in his first habeas application cannot be excused for lack of the necessary evidence to raise the *Batson* claim.  Thus, there was no "factual or legal basis" "unavailable on the date the applicant filed the previous application," Sec. 5(1), and we hold that the TCCA's dismissal was based on the prior availability of his ineffective assistance claim.

2.    Certificate of Appealability

Washington also seeks a COA from the district court's denial of habeas corpus relief on two issues.  "A COA will be granted only if the petitioner makes 'a substantial showing of the denial of a constitutional right.'" *Shishinday v. Quarterman*, 511 F.3d 514, 520 (5th Cir. 2007) (quoting 28 U.S.C. § 2254(c)(2)). "To make such a showing, a petitioner 'must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" *Id.* (alterations in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Because Washington has failed to make a substantial showing of a denial of a constitutional right or otherwise meet the qualifications for his application, we deny his application for a COA.

a.    Ineffective Assistance

11

No. 09-70028

Washington argues that a COA should issue on whether the district court properly analyzed his claims of ineffective assistance at trial. He argues his trial counsel rendered ineffective assistance because (1) counsel's fee arrangement created a conflict of interest, (2) counsel executed a second affidavit regarding his representation of Washington after discussions with the judge and assistant district attorney, and (3) counsel's trial preparation and court performance were deficient. These claims lack sufficient merit to warrant a COA, and that application is denied for essentially the same reasons recited by the district court in its order filed August 3, 2009.

Washington first claims his trial counsel's fee agreement which assigned the $5,000 proceeds from Washington's pending workers' compensation settlement to counsel in addition to a $3,000 payment from Washington's family created an unethical conflict of interest. The state court concluded there was no conflict of interest and the district court found no established law to support granting a COA. The claim was rejected by the district court because Washington lacked evidence that any deficiency in his trial counsel's performance was caused by the fee arrangement and there is no presumption that an alleged conflict of interest is prejudicial. Washington does not make additional arguments before this court. The fee arrangement, even if questionable, does not prove that Washington's trial counsel had a conflict of interest which prejudiced Washington. His arguments on appeal, without more, do not show he was prejudiced by the fee arrangement and thus a COA is not appropriate on this issue.

Second, Washington alleges that his trial counsel's filing of two affidavits regarding the actions taken in Washington's defense, including one influenced by *ex parte* communications with the trial judge and prosecutor, show Washington's case was treated in a cursory and unfair manner in state court. However, Washington was permitted to cross examine his trial counsel before

the district court and fails to identify any specific constitutional rights affected by the hearing or the affidavits and thus a COA is not appropriate on this issue.

Third, Washington alleges that his trial counsel was inadequate, but generally fails to allege facts to support the allegations. As the district court noted, Washington failed to identify any non-defaulted instance of ineffective assistance which resulted in prejudice. By failing to provide reasons for relief, Washington cannot show he was prejudiced by his trial counsel's decisions at trial and thus a COA is inappropriate.

### b.    Criminal Records of Government Witnesses

Washington also seeks a COA on whether the district court properly analyzed his claims regarding the state's failure to provide defense counsel the criminal records of punishment-phase witnesses. He contends evidence of Ella Miller and Linda Desso's prior convictions was improperly withheld during the penalty phase, prejudicing Washington. These claims lack sufficient merit to warrant a COA, and that application is denied for essentially the same reasons recited by the district court in its order filed August 3, 2009.

The district court concluded that the possible evidence to impeach Miller's testimony was inadmissible evidence and therefore could not be material. It also concluded that Washington could not identify any perjured testimony from Desso. Thus, Washington cannot show he was prejudiced by the state's failiure to provide the criminal records of the witnesses at sentencing and a COA is inappropriate.

### CONCLUSION

Washington raised a successive petition for a writ of habeas corpus in Texas state court which was dismissed for abuse of the writ. The TCCA dismissed his claim under Section 5. The TCCA was not required to explicitly state its basis for dismissal was an adequate and independent state law ground. Further, we can consider the arguments that support the TCCA's decision and

recognize the basis for any *Batson* challenge was sufficiently present at voir dire and thus Washington's failure to raise the ineffective assistance claim in his first habeas corpus petition triggered the procedural bar of Section 5.  We AFFIRM the district court's holding that the TCCA found Washington's claim procedurally defaulted under an independent and adequate state rule of procedure and DENY Washington's application for a COA.