# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 20, 2013

Lyle W. Cayce
Clerk

No. 12-70036

MANUEL GARZA,

Petitioner - Appellant,

v.

WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, ELROD, and GRAVES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

In 2002, a Texas jury found Manuel Garza guilty of murdering San Antonio Police Officer John Riojas, and the state trial court imposed a sentence of death. The Texas Court of Criminal Appeals affirmed Garza's conviction and sentence on direct appeal and denied post-conviction relief. In an exhaustive opinion, the district court denied Garza's federal habeas petition and denied him a certificate of appealability ("COA"). Garza now seeks a COA so that he may pursue his *Strickland* ineffective-assistance-of-counsel claims in this court. We conclude that reasonable jurists would not debate the district court's decision to deny habeas relief on Garza's *Strickland* claims. We therefore deny his request for a COA.

No. 12-70036

I.

On February 2, 2001, Officer Riojas stepped out of his marked police car and approached Garza on a street in San Antonio, Texas. Officer Riojas asked Garza for his name. Garza knew that several warrants for his arrest were outstanding. When Officer Riojas asked Garza to place his hands on the police car, Garza sprinted away, explaining later: "As I started running the cop was telling me to stop. I just wanted to get away. I knew I was gonna go to jail and I didn't want that." Officer Riojas gave chase, eventually catching up to and physically engaging Garza. In the course of the altercation, Officer Riojas drew his firearm, which Garza wrested away. Garza fired one shot, killing Officer Riojas. Garza was arrested two days later.

A grand jury indicted Garza on one count of capital murder for the shooting death of Officer Riojas.[1] The state trial court appointed two attorneys to represent Garza, Vincent Callahan as lead counsel and Edward Camara as second chair. The guilt/innocence phase of the trial commenced in October 2002. After the jury returned a guilty verdict, the punishment phase ensued. The jury answered affirmatively to the special issues submitted under Article 37.071 of the Texas Code of Criminal Procedure—i.e., the jury found that there was a probability that Garza would commit criminal acts of violence constituting a continuing threat to society and that the mitigating circumstances were not sufficient to warrant a sentence of life instead of death. Accordingly, the trial court imposed a sentence of death.

The Texas Court of Criminal Appeals affirmed Garza's conviction and sentence on direct appeal. *Garza v. State*, No. 74,467, 2005 WL 395442 (Tex. Crim. App. Feb. 16, 2005). Garza filed his first state application for a writ of

---

[1] A person commits capital murder in Texas when the person intentionally and knowingly causes the death of a police officer who is acting in the lawful discharge of an official duty and who the person knows is a police officer. Tex. Penal Code Ann. § 19.03(a)(1).

No. 12-70036

habeas corpus in 2004. In 2008, after a hearing, the state habeas court issued findings of fact and conclusions of law, recommending that the application be denied. The Texas Court of Criminal Appeals adopted the state habeas court's findings and conclusions and denied habeas relief. *Ex Parte Garza*, No. 70,797–01, 2008 WL 5245545 (Tex. Crim. App. Dec. 17, 2008). Garza filed his original federal habeas petition in 2009. The district court granted a motion to stay those proceedings to allow Garza to return to state court and exhaust remedies based on new claims and evidence. The Texas Court of Criminal Appeals dismissed the second state habeas application as an abuse of the writ. *Ex Parte Garza*, No. 70,797–02, 2011 WL 4826968 (Tex. Crim. App. Oct. 12, 2011). Garza filed his amended federal habeas petition in 2012, which the district court denied. *Garza v. Thaler*, 909 F. Supp. 2d 578, 691 (W.D. Tex. 2012). The district court also denied Garza a COA. *Id.* Garza now requests a COA from this court.

## II.

The AEDPA governs our consideration of Garza's request for a COA. Under the AEDPA, a state habeas petitioner must obtain a COA before he can appeal the federal district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1)(A); *see Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (describing a COA as a "jurisdictional prerequisite" without which "federal courts of appeals lack jurisdiction to rule on the merits of the appeals from habeas petitioners"). A COA is warranted upon a "substantial showing of the denial of a constitutional right." § 2253(c)(2). A petitioner satisfies this standard if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA when the district court has denied relief on procedural grounds, such as procedural default, a petitioner must show both a debatable claim on the merits *and* that the district court's procedural ruling is

3

debatable. *See id.* at 484–85. The issue is "the debatability of the underlying constitutional claim, not the resolution of the debate." *Miller–El,* 537 U.S. at 342; *see id.* at 338 ("[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* at 336. In cases involving the death penalty, "any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor." *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000).

We evaluate the debatability of Garza's constitutional claims against the backdrop of the AEDPA's highly deferential standard. Under the AEDPA, a federal court may not grant habeas relief unless the petitioner has first exhausted state remedies with respect to the claim at issue. 28 U.S.C. § 2254(b). To prevail, the habeas petitioner must prove that the state court's constitutional adjudication resulted in either "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2). Clearly established federal law is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000). A state-court decision is contrary to clearly established federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state-court decision fails the "unreasonable application" prong if it "identifies the correct governing legal

No. 12-70036

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* When ruling on a petition for a writ of habeas corpus, the federal district court must defer to the state court's factual findings, *Moody v. Quarterman*, 476 F.3d 260, 267–68 (5th Cir. 2007), and consider only the record that was before the state court, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

## III.

In support of his application for a COA, Garza argues that he received ineffective assistance of counsel because his trial counsel: (1) failed to submit appropriate death penalty questions to the potential jurors during jury selection; (2) failed to call an investigator as a witness and failed to introduce hospital records at the guilt/innocence phase; and (3) failed to present mitigating evidence at the punishment phase. Garza contends that reasonable jurists would debate the correctness of the district court's decision to deny relief. Below, we set forth the *Strickland* ineffective-assistance-of-counsel standard. We then turn to Garza's claims.

## A.

To prevail on an ineffective-assistance-of-counsel claim, a defendant must show, first, that counsel's performance was deficient and, second, that such deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (denying relief to a habeas petitioner challenging a death sentence). As a general matter, this two-pronged approach requires the defendant to demonstrate that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must meet both prongs; otherwise, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

No. 12-70036

The first *Strickland* prong requires the defendant to show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Any such showing must overcome a "strong presumption" that the representation did fall "within the wide range of reasonable professional assistance." *Id.* at 689. Under the second prong, when a death sentence is at issue, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Supreme Court has recently pronounced that the likelihood of a different outcome must be "substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 791–92 (2011).

Because this case arises under the AEDPA, *Strickland* is not the only standard we must keep in mind. When a petitioner brings a *Strickland* claim under the AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 131 S. Ct. at 785. Both the *Strickland* standard and the AEDPA standard are "highly deferential" and "when the two apply in tandem, review is doubly so." *Id.* at 788 (internal quotation marks omitted). Therefore, even if Garza is able to make out a *Strickland* claim, we may not grant a COA unless Garza is able to show that, under the § 2254(d) standard, the district court's denial of the petition was "debatable or wrong." *See Slack*, 529 U.S. at 484.

B.

1.

In support of his claim that trial counsel in this case failed to ask potential jurors about their views on the death penalty, Garza identifies in his brief the general terms of the questions and answers at voir dire. Garza observes that the jurors were asked questions regarding their views on, *inter*

No. 12-70036

*alia*, (1) the death penalty, (2) hypothetical situations involving murder and the death penalty, (3) mercy, (4) self-defense, (5), guns and gun ownership, (6) jurors' obligations to be fair and impartial, and (7) the definition of "probability." Garza asserts that trial counsel failed to determine whether the jurors had "dogmatic views" on the death penalty as it might apply to Garza's case—i.e., a case in which an individual murders a police officer. Garza argues that such views, if held, would call into question whether the jurors were truly fair and impartial. Garza further argues that trial counsel was deficient because the "risk that such jurors may have been impaneled" could have been "minimized" if trial counsel had asked further questions about the jurors' specific views. The state argues that this claim is barred by procedural default. The district court agreed and further concluded that Garza had not established "cause" for the default. *Garza*, 909 F. Supp. 2d at 614, 624.

A federal habeas claim is barred by procedural default when the state court has rejected the claim pursuant to a state procedural rule that provides an adequate basis for the decision, independent of the merits of the claim. *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991)). Garza did not raise this claim in his first state habeas application. Garza raised the claim for the first time in his second state habeas application, which the Texas Court of Criminal Appeals dismissed as an abuse of the writ. Our circuit has consistently held that such a dismissal in Texas[2] is "an independent and adequate state ground for the

---

[2] Texas's abuse-of-the-writ doctrine prohibits a defendant in a death penalty case from bringing a subsequent application for a writ of habeas corpus unless the application contains specific facts showing that: (1) the claim could not have been presented in the initial application because the factual or legal basis for the claim was unavailable at the time the initial application was filed; (2) no rational juror could have found the defendant guilty; or (3) no rational juror would have answered the special issues in the state's favor. Tex. Code Crim. Proc. art. 11.071, § 5.

purpose of imposing a procedural bar" in federal habeas cases. *Hughes*, 530 F.3d at 342 (collecting cases). Garza does not dispute the propriety of the dismissal as an abuse of the writ. Accordingly, the district court's decision that Garza's voir dire-based *Strickland* claim is procedurally barred is not debatable. *See Slack*, 529 U.S. at 484–85.

Federal review of the merits of a procedurally-barred claim is permitted, however, where the petitioner is able to "'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.'"[3] *Hughes*, 530 F.3d at 341 (quoting *Coleman*, 501 U.S. at 735). The Supreme Court recently expanded this "cause" exception in *Martinez v. Ryan,* 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). Where, as in Texas, the state procedural framework makes it highly unlikely that a defendant will have a meaningful opportunity to raise on direct appeal a claim of ineffective assistance at trial, a "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, . . . counsel in that proceeding was ineffective.'" *Id.* at 1921 (quoting *Martinez*, 132 S. Ct. at 1320). Therefore, to succeed in establishing cause, the petitioner must show (1) that his claim of ineffective assistance of counsel at trial is "substantial"—i.e., "has some merit"—and (2) that habeas counsel was ineffective in failing to present those claims in his first state habeas proceeding. *See Martinez*, 132 S. Ct. at 1318.

---

[3] In addition, review on the merits is permitted if the petitioner can "'demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice.'" *Hughes*, 530 F.3d at 341 (quoting *Coleman*, 501 U.S. at 735). This exception is limited to cases in which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (internal quotation marks omitted). Garza does not argue that he is actually innocent. We therefore do not address this exception to procedural default.

No. 12-70036

The district court concluded that, under *Martinez*, there was no merit to Garza's claim and that therefore habeas counsel was not ineffective in failing to raise the claim at the first state proceeding. *Garza*, 909 F. Supp. 2d at 624. We agree. *Strickland* requires both deficient performance and prejudice. Garza utterly fails to satisfy *Strickland*'s second prong, relying solely on speculation. Indeed, Garza does not even argue that, without the alleged errors, there is a reasonable probability that the jury would not have answered the special issues in the state's favor. Instead, Garza argues that, because Callahan did not ask what the jurors would do in a case exactly like this one, the jurors *may* not have been fair and impartial. Garza therefore fails to establish that he suffered prejudice as a result of trial counsel's alleged error.

Moreover, Garza cites no authority, and we have found none, that would require a defense attorney to ask specific questions at voir dire. Although a complete failure to inquire into the jurors' views on the death penalty in a capital case might be unreasonable, trial counsel did in fact ask some questions dealing with the death penalty. Garza's claim of ineffectiveness is also undercut by his failure to provide any information about the jurors' answers to the questions posed in the written juror questionnaires and during voir dire examination by the prosecution. As the district court noted, "the prosecuting attorneys asked each of the[] venire members extensive questions regarding their views on the death penalty and made numerous references to the venire members' juror questionnaire answers." *Garza*, 909 F. Supp. 2d at 616. We must consider the full scope of the questions asked and answers given at voir dire to meaningfully evaluate the adequacy of trial counsel's attempts to identify juror bias. Because Garza cannot overcome the "strong presumption" that trial counsel's representation fell "within the wide range of reasonable professional assistance," *see Strickland*, 466 U.S. at 689, his claim of ineffective assistance has no merit. Accordingly, Garza has failed to demonstrate, under

9

No. 12-70036

*Trevino* and *Martinez*, "cause" for the procedural default.  This claim is not COA-worthy.

2.

In his second claim, Garza alleges that trial counsel's failure to introduce two pieces of evidence—prior inconsistent statements made by one of the state's witnesses and medical records allegedly supporting the theory that Garza acted in self-defense—amounted to a *Strickland* violation.  The district court denied this claim, concluding that Garza failed to meet the heavy *Strickland*/AEDPA burden.  *Garza*, 909 F. Supp. 2d at 653, 655–56.

Garza's claim that trial counsel rendered ineffective assistance by failing to introduce inconsistent statements made by a state's witness is grounded in the testimony offered by Erica Henderson.  Henderson testified on direct examination at trial that she had seen the altercation between Garza and Riojas; that Garza had possession of the gun; that she saw and heard the gunshot; and that Riojas's hands were nowhere near the gun when the shot was fired.  On cross-examination Henderson admitted that she had previously stated to a defense investigator, Jeff Mitchell, that the altercation, as well as the gunshot, might have been "an accident."  Garza now argues that trial counsel should have introduced the testimony of Mitchell for the purpose of impeaching Henderson.  Garza also argues that certain medical records indicate that he "t[ook] a beating, lending validity to his claim of self defense."  Garza contends that trial counsel's failure to introduce these two pieces of evidence at the guilt/innocence phase amounted to ineffective assistance of counsel.

The state habeas court concluded that, because Henderson admitted to the prior inconsistent statement, the defense would not have been permitted to introduce extrinsic evidence of that statement under the Texas Rules of Evidence.  Similarly, the state habeas court concluded that the medical records

10

would have been inadmissible under the Texas Rules of Evidence because nothing in the records reflected that any injuries were caused by the victim. In denying relief, the state habeas court reasoned that counsel cannot be ineffective for failing to attempt to introduce inadmissible evidence. The federal district below dismissed the claim on similar grounds. *Garza*, 909 F. Supp. 2d at 654.

"The Supreme Court has 'repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.'" *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)). The Texas habeas court's interpretation of Texas evidentiary rules is therefore binding in this case. We will not disturb the state habeas court's conclusion that trial counsel's failure to attempt to introduce inadmissible evidence did not amount to deficient performance. *See Paredes*, 574 F.3d at 291 ("[C]ounsel did not act deficiently by failing to raise a meritless objection."). We also observe that the failure to make a meritless attempt at introducing evidence could not have prejudiced Garza because the evidence ultimately would not have been introduced.[4] *See id.* at 291 n.13.

Regarding the medical records, Garza does not provide any specific facts as to why such records would have changed the outcome, given the other, overwhelming evidence that Garza did not act in self-defense. Garza's own confessions, which were admitted into evidence, reveal that he did not act to protect himself against unlawful force, but instead to avoid being sent to jail. Garza took the gun out of Officer Riojas's hands and pulled the trigger because he "wanted to get away." Furthermore, evidence of Garza having been involved in an altercation, which is precisely what Garza contends the medical records

---

[4] Moreover, the record reflects that the witness was in fact confronted with the inconsistent statement on cross-examination.

would have shown, was already in the record.  For example, a witness testified at trial that Garza said he had been in a fight and that Garza had bruises on his neck.  We therefore conclude that the state habeas court's *Strickland* adjudication was not the result of an unreasonable application of federal law or based on an unreasonable determination of the facts.  *See* § 2254(d)(1)–(2). Jurists of reason would not debate the district court's denial of relief on this second claim.  *See Slack*, 529 U.S. at 484.

3.

Garza alleges in his final claim that trial counsel failed to adequately develop mitigating evidence.  Garza alleges that he was severely abused and neglected during his childhood; that he never lived in a stable household; that his family taught him to lead a life filled with drugs and crime; and that he suffers from a host of psychological problems related to fetal alcohol syndrome. Garza argues that trial counsel rendered ineffective assistance by failing to adequately investigate these problems and incidents and failing to present such evidence to the jury at the punishment phase.  As the district court observed, the argument relating to fetal alcohol syndrome was raised for the first time in the second state habeas application, which the Texas Court of Criminal Appeals dismissed as an abuse of the writ.  *Garza*, 909 F. Supp. 2d at 633–34.  Because, in the proceedings below, the state failed to request dismissal as to the fetal-alcohol-syndrome argument on procedural grounds, the district court assessed that argument *de novo*.  *Id*. at 634.  We first address the exhausted aspect of the mitigating-evidence claim and then turn to the unexhausted fetal-alcohol-syndrome aspect of the claim.

During the punishment phase of Garza's trial, trial counsel called three witnesses on Garza's behalf: Garza's uncle, mother, and sister.  These witnesses testified to the prevalence of crime in Garza's family; to the instability of Garza's household; to the physical abusiveness of Garza's father;

to the sexual abusiveness of Garza's father; and to Garza's behavioral problems in his youth. The witnesses also described Garza's mother favorably, testifying that she was a caring woman who loved her son. Furthermore, the witnesses offered their opinions that Garza would not pose a continuing danger to society. Garza's Texas Youth Commission ("TYC") file, detailing his background and the criminal history of his youth, was also admitted. The TYC file included three separate psychological evaluations, which were performed in 1996, 1997, and 1998 following convictions for robbery, burglary, and drug crimes. Dr. Ben Ferguson's evaluation concluded that Garza was "negative towards authority," had "difficulty internalizing society's values," and was "impulsive," and that Garza's gang membership was a contributing force behind his anti-social behavior.

In support of his claim that trial counsel failed to adequately investigate his background, Garza argues that trial counsel should have called a different uncle, Raul Gonzales, to testify. Gonzales testified at the first state habeas hearing. There, Gonzales reiterated many of the same facts and opinions that the punishment-phase witnesses had discussed—e.g., that Garza had suffered a life of abuse, crime, and drugs. The state habeas court concluded that this testimony was merely cumulative of the testimony offered at the punishment phase and that therefore trial counsel's failure to introduce this evidence did not render his assistance defective.

Garza also argues that trial counsel should have called an expert. In support, Garza points to the expert testimony of Dr. Jack Ferrell, which was also offered at the first habeas hearing. Ferrell, who was engaged by the defense to perform a mental health evaluation of Garza prior to Garza's trial, testified at the habeas hearing that he would have testified at the punishment phase that Garza did not pose a risk of future dangerousness. But he also testified that, prior to the trial, he had "concerns" about testifying to the

absence of future dangerousness after reviewing some of the documents provided to him by trial counsel.[5]  Furthermore, Ferrell admitted at the habeas hearing that he was unaware that Garza had been convicted previously for the unlawful possession of a weapon and that he did not remember anything about a burglary offense in which Garza used a screwdriver as a weapon.  Had Ferrell known about these incidents, he testified, he would have factored them into his analysis of future dangerousness.  Ferrell testified that he had reviewed only a few documents pertaining to Garza's background and performed only a brief, limited clinical evaluation of Garza for the purpose of ascertaining Garza's mental status.

Dr. Kate Allen also testified at the habeas hearing to what she could have offered at trial.  Allen admitted that future dangerousness was beyond the scope of her expertise.  Allen did testify, though, to Garza's non-violent nature, identifying Garza as "passive" and as one who was "not a confronter." Allen based her testimony on an analysis of a set of "risk" factors—i.e., behavioral factors that show a propensity for future violence—and "protective" factors—i.e., behavioral factors that show a propensity for non-violence.  Yet, in spite of her general conclusion that Garza was non-violent, Allen admitted that Garza displayed more risk factors than protective factors.  Moreover, on cross-examination, Allen admitted that she did not take into account, for example, Garza's truancy, use of a screwdriver in the prior burglary offense, automobile theft, drug abuse, juvenile fighting, and gang membership.  Allen never actually met with Garza.

---

[5] This comports with Callahan's testimony.  Callahan testified at the first habeas proceeding that he had asked Ferrell to prepare a mental health evaluation.  Callahan further testified that he had decided not to call Ferrell at the punishment phase because Ferrell had indicated to him that he would testify that Garza was a "future danger."

No. 12-70036

The state habeas court concluded that the decision to not call an expert at trial was a reasonable tactical decision because the damaging nature of the testimony far outweighed any benefit that might have inured to Garza. The court observed that the testimony actually supported a finding that Garza would engage in future violent acts. Moreover, the court pointed out that the experts at the habeas hearing ignored certain evidence, such as the prior weapons offenses, and—in the court's view—unjustifiably discounted certain evidence, such as past drug use and gang membership. This, in addition to the experts' admitted limited reviews of documents and interactions with Garza, undermined the credibility of the testimony, according to the state habeas court. The court accepted trial counsel's judgment that the three witnesses who did testify at the punishment phase were best positioned to explain Garza's background and invoke sympathy for and humanize Garza. Such a judgment was not, in the court's view, anything but reasonable. The state habeas court also concluded that, in light of its criticisms, the "net effect" of this testimony would not have changed the outcome of the case.

The question in assessing an ineffectiveness claim that relies on a failure to develop mitigating evidence is whether "the investigation supporting counsel's decision not to introduce mitigating evidence of [petitioner's] background was itself reasonable." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). The Supreme Court has further explained:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all

15

the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* (internal quotation marks omitted). Defense counsel is not required to "pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Richter*, 131 S. Ct. at 789–90. Moreover, counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.* at 789. On habeas review, we consider the state court's application of these legal principles under the deferential AEDPA standard. *See* § 2254(d); *see also Slack*, 529 U.S. at 484.

We conclude that Garza has not met his burden to show that the state habeas court's conclusion on this claim amounted to an unreasonable application of *Strickland* or an unreasonable determination of the evidence. *See* § 2254(d)(1)–(2). As an initial matter, the state habeas court deemed the testimony of Gonzales to be cumulative, a not unreasonable assessment in light of the facts in the record. *See* § 2254(d)(2). Trial counsel elicited the same sort of information—the abuse, neglect, and criminal atmosphere that permeated Garza's youth—from the three witnesses at the punishment phase of the trial, and Garza does not explain how Gonzales's testimony would have benefited his case. Furthermore, the state habeas court's conclusion that trial counsel was justified in not calling Ferrell, given Ferrell's apparent concerns over the future dangerousness issue, was not unreasonable. In any event, Garza does not contend that trial counsel's *investigation* with respect to Ferrell was deficient; instead Garza challenges trial counsel's failure to call Ferrell. Such a "strategic choice" is "virtually unchallengeable." *See Wiggins*, 539 U.S. at 521.

Trial counsel's failure to investigate and develop the type of evidence presented by Allen also does not warrant a COA. The record reflects that trial

counsel did consult with a mental health specialist (Ferrell) and did consult with Garza's family members, who described Garza's troubled background and childhood at the punishment phase. Indeed, Callahan testified that he had spoken with five members of Garza's family prior to the punishment phase of the trial and that the three witnesses at the punishment phase testified to *everything* he had heard from those family members. In addition, Camara testified that the defense's mitigation specialist, Ann Mathews, had interviewed the three witnesses who testified at the punishment phase and had related to trial counsel the information gathered in those interviews. Trial counsel's investigation was focused on Garza's youth and family history, and the strategy that trial counsel employed was designed to illuminate Garza's troubled background and evoke sympathy. Moreover, the state habeas court expressed serious doubts concerning the credibility of Allen's testimony, which undermined Garza's *Strickland* claim in the court's view. For purposes of habeas review, we thus defer to the state habeas court's determination that trial counsel's investigation was the product of "reasonable professional judgments," especially in light of the "heavy measure of deference" owed to trial counsel's judgments, *see Wiggins*, 539 U.S. at 521–22, despite the decision to not further inquire with or call an expert. Thus, we cannot say that the state habeas court's assessment of trial counsel's decisions regarding mitigating evidence was the result of an unreasonable application of *Strickland* or an unreasonable determination of the facts. *See* § 2254(d)(1)–(2). Accordingly, the district court's denial of this claim is not a debatable disposition.[6] *See Slack*, 529 U.S. at 484.

---

[6] We note that Garza points out in his brief that lead counsel was appointed only months prior to the trial. Garza's position on the mitigating-evidence claim, however, is centered not on how much time trial counsel spent on these matters, but on what trial counsel did or did not do. In any event, we conclude that Garza has not met his burden under § 2254, given the investigation in which trial counsel engaged.

17

As noted above, Garza's ineffective-assistance-of-counsel claim in his second state habeas application contained a new argument based on fetal alcohol syndrome.  The district court reviewed this claim *de novo* because the state failed to request dismissal on procedural grounds.  The state now argues that the claim is barred by procedural default.  Even assuming *arguendo* that the claim is not barred, however, we conclude that the district court was correct in dismissing the claims as meritless upon *de novo* review.  *See Fisher v. Texas*, 169 F.3d 295, 301–02 (5th Cir. 1999) (declining to exercise the court's discretion to apply a procedural bar in a habeas case in which the state failed to raise the defense before the district court).

Garza contends that trial counsel was ineffective in not investigating and introducing evidence of his possible fetal alcohol syndrome.  But, as the district court observed, Garza fails to provide evidence that the underlying facts concerning such a syndrome were made known to trial counsel.  Trial counsel had no leads to that effect.  None of the family members mentioned the mother's alcohol or drug abuse to trial counsel; in fact, the witnesses spoke favorably of her at the punishment phase.  Furthermore, such evidence was neither located in the TYC file, which contained three separate psychological evaluations of Garza, nor provided by Ferrell at any time.  Given trial counsel's investigation, and the lack of any evidence regarding the mother's substance use, it was entirely reasonable to not investigate the possible effects of fetal alcohol syndrome.  Accordingly, Garza cannot overcome the "strong presumption" that trial counsel's representation on this front fell within the "wide range of reasonable professional assistance."  *See Strickland*, 466 U.S. at 689.

Garza's request for a COA is DENIED.

18