# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-70010

United States Court of Appeals
Fifth Circuit

**FILED**
June 21, 2016

Lyle W. Cayce
Clerk

MICHAEL WAYNE NORRIS,

Petitioner-Appellee/Cross-Appellant,

v.

LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellant/Cross-Appellee.

Appeals from the United States District Court
for the Southern District of Texas

Before SMITH, ELROD, and HIGGINSON, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

The district court granted habeas corpus relief to Petitioner Michael Wayne Norris, a Texas death-row inmate, based on its finding that the jury instructions at the sentencing phase of Norris's trial violated his Eighth and Fourteenth Amendment rights under *Penry v. Lynaugh*, 492 U.S. 302 (1989), by not allowing the jury to give full effect to Norris's mitigating evidence. The state, through its Director, appeals the district court's grant of habeas relief, and Norris moves for a certificate of appealability to appeal the district court's denial of his remaining federal habeas claims related to his conviction. For the following reasons, we AFFIRM the district court's grant of habeas relief and DENY Norris's motion for a certificate of appealability.

No. 15-70010

## I.

Norris was convicted of capital murder and sentenced to death in 1987 for murdering his girlfriend, Georgia Rollins (Georgia), and her two-year old son.[1]  According to the evidence at trial, on the day of the murders, Norris asked to babysit the two-year old while Georgia attended church, but Georgia refused.  Norris appeared at the church during the service to get the child, which resulted in a confrontation with Georgia that required the intervention of a security guard.  Norris became angry, went home, and took a nap.  Later that night, Norris took a high-powered deer rifle to Georgia's apartment.  Georgia was at the apartment along with other members of her family.

Members of Georgia's family testified that Norris appeared outside her bedroom window, broke the glass, and fired a shot into her bedroom.  Norris then climbed into the bedroom and said to her, "I hate to do this Georgia, but I told you.  I told you you couldn't mess me over.  I told you you couldn't leave me."  While Georgia held the child, Norris fired additional close-range shots at her and the child and then left the room.  He turned the doorknob of another bedroom but stopped and returned to Georgia's room.  He told her that he hated to see her suffer and fired more shots at her and the child.  Georgia's family testified they heard about five shots in all.  Georgia's other sons testified that they saw Norris leave her bedroom with the rifle, at which point Norris said to them, "Y'all get out of my way.  Let me go out.  I done come and do what I come to do.  Just let me go out."

Norris returned to his home, which he shared with his mother, and told his mother that he had killed Georgia and the two-year old and that he was

---

[1] The Texas capital murder statute applicable to Norris's conviction provided that a person commits capital murder if he murders more than one person during the same criminal transaction.  Tex. Penal Code Ann. § 19.03; *see Norris v. State*, 902 S.W.2d 428, 437 (Tex. Crim. App. 1995).

sorry.  Norris's mother testified that he was sobbing.  Norris called his pastor and confessed to the murders.  Norris also called the police to turn himself in. The police arrested Norris and seized the rifle, and later that night, Norris confessed to the police that he had killed Georgia and the two-year old.

At the crime scene, police found four spent rifle casings matching Norris's rifle and one spent rifle casing left in Norris's rifle.  The child had five gunshot wounds, with the chest and head wounds being fatal.  Georgia suffered three gunshot wounds to the head and chest and fragment wounds to other parts of her body.  The chest wound and the wound from a round that traveled through her left arm and into her chest were fatal.

The state's evidence at trial showed that when Norris fired the first shot through the window from outside Georgia's bedroom, she was sitting or kneeling on the floor next to her bed and the child was lying on the bed.  The first shot was directed at the child and hit him in his right leg or thigh.  Georgia then picked up her nonmortally wounded child and held him to her chest crying, "my baby, my baby."  Norris climbed into the bedroom and fired another shot at the child's head, which entered his forehead and fragmented out the back of his head, hitting Georgia in the face and neck, fracturing her jaw, and exiting through her tongue.  Norris then shot the child and Georgia several more times, fatally wounding Georgia via shots through her chest.

Norris testified at trial.  He stated that when he went to Georgia's apartment, he did not intend to use the rifle but took it along for his own protection in case there was any trouble.  He testified that he wanted to talk to Georgia about why she was treating him badly, but she refused to answer the door.  Norris also said that he was emotionally distraught because Georgia had embarrassed him at church, had hung up the phone when Norris tried to call, and had refused to talk to him when he came to the apartment.  Norris

testified that he had been depressed because of the problems in their relationship.

Norris also testified that he intended to kill only Georgia and not the child. Norris claimed that the child was not on the bed when he shot the first shot but, rather, Georgia was holding the child at that time. He said he aimed away from the child but accidentally shot him while trying to shoot Georgia. Norris testified that he only shot the child one time in the head and that someone, possibly the police, shot the baby several more times to make it look like Norris had intentionally killed the child. The state cross-examined Norris about the two prior admissions made to his mother and the police, which did not include anything about accidentally killing the child. Norris claimed that he did tell the police that he accidentally killed the child, but the police did not put that in his confession. Norris's mother also testified that she told the police that Norris had told her he accidentally killed the child. She testified that the police had not put that in her statement. During his testimony, Norris admitted that he had previously pulled a gun on Georgia and threatened to kill her if she left him. When asked at trial how he felt after seeing that he had blown the child's head open, Norris testified that he "didn't feel real bad."

The jury convicted Norris of the two murders. At the sentencing phase of Norris's trial, the court required the jury to determine if Norris should be sentenced to death by answering the two special issues required at that time under Texas's capital sentencing scheme: (1) whether Norris acted deliberately and (2) whether there was a probability that Norris posed a future danger. The jury answered the two special questions in the affirmative, and the trial judge accordingly sentenced Norris to death. The conviction and sentence were affirmed on direct review. *Norris v. State*, 902 S.W.2d 428, 430–34 (Tex. Crim. App. 1995). The Texas Court of Criminal Appeals (TCCA) denied Norris's first

state habeas application, *Ex parte Norris*, 390 S.W.3d 338 (Tex. Crim. App. 2012), and dismissed as successive Norris's second state habeas application, *Ex parte Norris*, No. WR-72835-01, 2009 WL 3682331 (Tex. Crim. App. Nov. 4, 2009).[2]

Norris timely filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254. The state filed a motion for summary judgment. The district court granted in part the state's motion for summary judgment, denying habeas relief as to Norris's conviction and denying a certificate of appealability as to all claims relating to his conviction. But the district court granted Norris habeas relief as to his sentence based on its determination that the jury did not have an opportunity to give full effect to Norris's mitigating evidence of emotional distress and good character, in violation of Norris's Eighth and Fourteenth Amendment rights under *Penry v. Lynaugh*, 492 U.S. 302 (1989). *See Norris v. Stephens*, No. H-12-CV-3645, 2015 WL 1459187, at \*17 (S.D. Tex. Mar. 28, 2015). The district court ordered the state to release Norris from custody within 120 days of the entry of the judgment unless the state either grants Norris a new sentencing hearing or vacates Norris's death sentence and resentences him consistent with state law.[3] The state appeals the district court's grant of habeas relief as to Norris's sentence. Norris moves for a certificate of appealability to appeal the denial of his other habeas claims that relate to his conviction.

---

[2] While the first state habeas petition was pending, the TCCA denied the second petition as successive. *Ex parte Norris*, 2009 WL 3682331, at \*1.

[3] The order is stayed pending appeal.

No. 15-70010

## II.

Review of a federal petition for habeas relief is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[4] *Garza v. Stephens*, 738 F.3d 669, 673 (5th Cir. 2013). Under AEDPA, a state habeas petitioner must obtain a certificate of appealability (COA) before he can appeal the federal district court's denial of habeas relief. *Id.*; *see* 28 U.S.C. § 2253(c). To obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." *Garza*, 738 F.3d at 673; 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Young v. Stephens*, 795 F.3d 484, 489 (5th Cir. 2015) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003)), *cert. denied*, 136 S. Ct. 1453 (2016). "In making this determination, we examine the district court's application of [AEDPA] to the petitioner's claims and 'ask whether that resolution was debatable amongst jurists of reason.'" *Id.* (quoting *Miller-El*, 537 U.S. at 336–37). We review the district court's conclusions of law *de novo* and its findings of fact for clear error. *Id.* at 490.

Under AEDPA, a federal court may issue a writ of habeas corpus for a state conviction only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

---

[4] Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (1996).

determination of the facts in light of the evidence presented in the State court proceedings." *Id.* at 489 (quoting 28 U.S.C. § 2254(d)).

A state court's decision is "contrary to clearly established federal law" for purposes of § 2254(d)(1) if: "'(1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts.'" *Id.* at 489–90 (quoting *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc)). Under § 2254(d)(2), a factual determination made by a state court is "'presumed to be correct' unless the petitioner satisfies 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Id.* (quoting 28 U.S.C. § 2254(e)(1)).

## III.

We turn first to the state's appeal of the district court's grant of habeas relief on Norris's *Penry* claim. This court reviews a grant of summary judgment *de novo*, applying the same standard applied by the district court. But unlike the standard for a regular motion for summary judgment, when considering a motion for summary judgment in the context of habeas corpus cases, the state court's factual findings are presumed correct unless the petitioner can show by clear and convincing evidence that the presumption should not apply. 28 U.S.C. § 2254(e)(1); *see Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010) (explaining impact of § 2254(e)(1) on summary judgment standard).

The district court granted Norris habeas relief based on its finding that the jury instructions at the sentencing phase of Norris's trial violated Norris's Eighth and Fourteenth Amendment rights because the instructions did not allow the jury to give full effect to Norris's mitigating evidence, in violation of *Penry v. Lynaugh*, 492 U.S. 302 (1989).

7

In *Penry*, the Supreme Court held that "the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record . . . as a basis for a sentence less than death." *Id.* at 317 (emphasis omitted). Penry had been sentenced under Texas's capital punishment scheme, which, at that time, imposed the death penalty if the jury answered the following questions in the affirmative: whether the defendant acted deliberately and whether there was a probability that the defendant posed a future danger. *See id.* at 310 (citing Tex. Code Crim. Proc. Ann. Art. 37.071(b) (Vernon 1981 and Supp. 1989)).

At sentencing, Penry had proffered mitigating evidence of an intellectual disability. *Id.* at 322–23. The Supreme Court reasoned that "Penry's mental retardation . . . 'had relevance to [his] moral culpability beyond the scope of the special verdict questio[ns]'" of deliberateness and future dangerousness. *Id.* at 322. Regarding the question of deliberateness, the Court explained that "[a] rational juror at the penalty phase of the trial could have concluded . . . that [Penry] deliberately killed [the victim]" but nevertheless believed that Penry should not be subject to the death penalty "[b]ecause Penry was mentally retarded" and thus was "less able than a normal adult to control his impulses or to evaluate the consequences of his conduct." *Id.* at 322. In other words, "a juror who believed that Penry's retardation and background diminished his moral culpability and made imposition of the death penalty unwarranted would be unable to give effect to that conclusion if the juror also believed that Penry committed the crime 'deliberately.'" *Id.* at 323. Regarding the question of future dangerousness, the Court explained that the evidence of Penry's intellectual disability, though "relevant" to future dangerousness, was "relevant only as an *aggravating* factor because it suggest[ed] [only] a 'yes'

answer to the question of future dangerousness." *Id.* In sum, even if the jury had believed that Penry was intellectually disabled and, for that reason, should not be executed, the special issues under Texas's capital punishment scheme did not give the jury a way to express that belief because Penry's intellectual disability did not support a "no" answer to whether he acted deliberately or would likely be dangerous in the future. *See id.* at 328 ("[I]n the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused background by declining to impose the death penalty, we conclude that the jury was not provided with a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision.").

Here, Norris presented mitigating evidence that: (1) the murders were crimes of passion; (2) Norris was emotionally distraught at the time of the offense because of the quarrel between him and Georgia earlier that day at church; (3) Norris had the opportunity to shoot other members of Georgia's family, but did not; (4) Norris expressed remorse for the murders to his mother and his pastor; (5) Norris turned himself in to the police soon after the crime; (6) Norris accepted responsibility for the crime; (7) Norris had been a good student; (8) Norris was active in church; (9) Norris was a good father to his daughter and treated the murdered baby like his own child; and (10) Norris maintained regular employment. At the penalty phase of Norris's trial, the trial court submitted to the jury the two special issues of whether Norris acted deliberately and whether there was a probability that Norris posed a future danger. *See* Tex. Code Crim. Proc. Ann. Art 37.071(b) (1987).[5]

---

[5] *See Joiner v. State*, 825 S.W.2d 701, 703 & n.2 (Tex. Crim. App. 1992) (en banc) (quoting version of Tex. Code Crim. Proc. Ann. Art. 37.071(b) applicable prior to the 1991 amendment).

Norris argued on direct appeal that because the jury was not given a general mitigation instruction, the jury was not able to give effect to his mitigating evidence in violation of *Penry*. The TCCA rejected Norris's *Penry* claim. *Norris*, 902 S.W.2d at 447. The TCCA considered both *Penry* and *Johnson v. Texas*, 509 U.S. 350 (1993), which helped clarify *Penry*. *See id.* at 447–48. The TCCA explained that "*Penry* was not meant to require a jury to give possible effect to mitigating evidence 'in every conceivable manner in which the evidence might be relevant,'" but, instead, required courts to determine "whether there is a reasonable likelihood that the jury . . . applied the challenged instruction[s] in a way that *prevents* the consideration of constitutionally relevant evidence." *Id.* (emphasis added) (quoting *Johnson*, 509 U.S. at 367). The TCCA held that because Norris's mitigating evidence allowed the jury to answer "no" to the special questions of deliberateness or future dangerousness, no separate *Penry* instruction (a general mitigation instruction) was required. *Id.* at 447–48.

The district court found that the TCCA's determination was "an unreasonable application of *Penry*." The district court reasoned that the jury was unable to give effect to some of Norris's mitigating evidence—specifically his evidence of emotional distress and good character—because that evidence was "not relevant to the issues of deliberateness or future dangerousness." *Norris*, 2015 WL 1459187, at *16.

The state argues that the district court had no authority under AEDPA to grant habeas relief because the TCCA's determination was a reasonable application of U.S. Supreme Court precedent that existed at the time of the TCCA's determination, none of which held that mitigating evidence of emotional distress or good character required an additional *Penry* instruction.

10

We disagree.  As Norris correctly argues, *Pierce v. Thaler*, 604 F.3d 197 (5th Cir. 2010), is controlling authority that forecloses the state's argument.[6]

In *Pierce*, we held that Supreme Court case law clearly established that general good character evidence requires an additional *Penry* instruction under Texas's capital sentencing scheme.  604 F.3d at 208–10.[7]  Pierce was convicted of capital murder for shooting a restaurant manager during a robbery and was sentenced to death.  *Id.* at 199.  He sought federal habeas relief under *Penry*, arguing that because the jury at sentencing was given instructions on only the two special issues of deliberateness and future dangerousness, the jury was unable to give full effect to some of his mitigating evidence.  *Id.* at 201.  Pierce's mitigating evidence included his youth, good behavior, and maturation and intellectual growth while in prison, and testimony from his mother that he was a good, well-behaved child.  *Id.*  The district court "rejected as unreasonable the TCCA's conclusion that the two special issues permitted the jury to give meaningful consideration and effect"

---

[6] At oral argument, the state argued, for the first time, that *Pierce* overturned prior Fifth Circuit case law holding that mitigating evidence of good character and emotional distress does not require an additional *Penry* instruction under Texas's capital sentencing scheme, in violation of the rule of orderliness.  *See*, *e.g.*, *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court.  Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void." (citations omitted)).  We have followed *Pierce* in the past and, indeed, must do so here under the rule of orderliness.  *See, e.g.*, *McGowen v. Thaler*, 675 F.3d 482, 495 (5th Cir. 2012); *see also* note 8, *infra*.

[7] The final state-court adjudication on the merits of Norris's *Penry* claim occurred on March 1, 1995, *Norris*, 902 S.W.2d 428.  Norris did not raise his *Penry* claim on state habeas review, but only on direct review.  Therefore, the relevant clearly established federal law for AEDPA purposes is U.S. Supreme Court case law that existed on March 1, 1995.  *See Pierce*, 604 F.3d at 200.  *Pierce* explains that though two of the Supreme Court cases on which it relies are from 2005 and 2006, those cases "set out the clearly established law as it existed in 1994."  604 F.3d at 209.  Therefore, *Pierce*'s interpretation of U.S. Supreme Court precedent applies to Norris's *Penry* claim.

to that mitigating evidence because some of the good character evidence was irrelevant to either deliberateness or future dangerousness, but was relevant to Norris's general moral culpability and character. *Id.* We agreed.

In *Pierce*, we relied on several Supreme Court cases analyzing *Penry* claims under California's death penalty sentencing scheme, which "establish that good character evidence has meaningful relevance to moral culpability, which a majority of the Justices in *Franklin* indicated is not encompassed by the special issues" of Texas's scheme. *Pierce*, 604 F.3d at 210 (referring to *Franklin v. Lynaugh*, 487 U.S. 164 (1988)). We concluded that "[t]hese authorities establish that an additional instruction was required in order for the jury to consider and give effect to this mitigating evidence."[8] *Id.*

Here, Norris proffered evidence of general good character at the sentencing phase that showed he was active at church, had been a good student, was a good father to his daughter, and had maintained regular employment. Because *Pierce* spoke directly to general good character evidence and concluded that clearly established law as of 1994 required a general mitigating instruction under Texas's scheme in the face of such evidence, it controls here. *See id.* Thus, we conclude that under *Penry*, the jury instructions at the sentencing phase of Norris's trial did not adequately allow

---

[8] There are published Fifth Circuit cases prior to *Pierce* that hold the opposite. *See, e.g.*, *Boyd v. Johnson*, 167 F.3d 907, 912 (5th Cir. 1999) ("Evidence of good character tends to show that the crime was an aberration, which may support a negative answer to the special issue regarding the future dangerousness of the defendant" and thus can find "adequate expression under [the] second special issue" of Texas's scheme.); *Barnard v. Collins*, 958 F.2d 634, 640 (5th Cir. 1992) (stating in the context of the Texas capital sentencing scheme that "this court has concluded that evidence of good character does not require a special instruction under *Penry*"). We explained in *Pierce* that those cases predate *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007), and apply a standard that is in tension with *Abdul-Kabir*. *Pierce*, 604 F.3d at 210 n.9.

the jury to consider Norris's mitigating evidence of good character. We AFFIRM the district court's grant of habeas relief on Norris's *Penry* claim.

## IV.

We turn to Norris's application for a certificate of appealability to appeal the denial of his habeas claims that challenge his conviction. He asserts five issues that he argues warrant a certificate of appealability (COA). For the following reasons, Norris is not entitled to a COA on any of these issues.

## A.

In his federal habeas petition, Norris asserted several prosecutorial misconduct claims, as well as a cumulative prosecutorial misconduct claim. The district court concluded that Norris's cumulative prosecutorial misconduct claim was unexhausted and procedurally barred, and even if it was not barred, the claim was nevertheless without merit because Norris's individual claims of prosecutorial misconduct were without merit, procedurally defaulted, or both. We agree.

Whether a federal habeas petitioner exhausted state remedies is a question of law. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). To exhaust state remedies, the petitioner "must have fairly presented the substance of his claim to the state courts." *Id.* Norris's appellate brief on direct appeal relied almost exclusively on Texas case law in support of his prosecutorial misconduct claims and never stated that the claims were based on federal law.[9]

---

[9] Nowhere in his brief did Norris expressly state that his prosecutorial misconduct claims were based on federal law. The portion of Norris's brief discussing the prosecutorial misconduct claim does cite, once, to a U.S. Supreme Court case. But this single reference to a federal case is followed by all state-law citations. And the section of Norris's direct appeal brief that discusses the cumulative prosecutorial misconduct claim cites only Texas cases and never mentions federal law or the U.S. Constitution. Elsewhere in Norris's direct appeal brief, he did specifically make a claim under "the Eighth Amendment of the United States Constitution." Such specificity was lacking in Norris's discussion of his prosecutorial

No. 15-70010

In *Wilder*, we held that "[a] fleeting reference" to federal law within a lengthy state-law focused argument "does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights." *Id.* at 260. The appellant in *Wilder* had stated at the end of his argument on direct appeal that the trial court's ruling denied him "his right to a fair trial and due process of law as guaranteed him under the Fifth and Fourteenth Amendments to the U.S. Constitution . . . ." *Id.* Here, Norris made even less of a reference to the U.S. Constitution—he merely used the phrase "due process of law" but otherwise based his arguments on Texas cases. Under *Wilder*, this is insufficient to exhaust state remedies. *See id.* Because Norris cannot show that jurists of reason would debate whether his cumulative prosecutorial misconduct claim is unexhausted, a COA for this claim is unwarranted. *See Slack v. McDaniel*, 529 U.S. 473, 478, 484 (2000).

Moreover, even if Norris had sufficiently raised a federal due process claim, he would still be unable to make a "substantial showing of the denial of a constitutional right" because none of his individual prosecutorial misconduct claims raises valid constitutional violations. Norris asserted the following claims of prosecutorial misconduct, each of which were rejected by both the TCCA and the district court: the prosecutor (1) improperly accused defense counsel of being unethical, of lying, and of engaging in "extortion"; (2) commented on Norris's appellate rights by mentioning the appellate court; (3) argued the application of parole law; (4) argued that if the jurors spared Norris's life and he killed again, they would be responsible; and (5) argued that future jurors could not impose a death sentence on an individual who killed only one person if the jurors spared Norris's life after he killed two people.

---

misconduct claims. Not surprisingly, the TCCA analyzed Norris's prosecutorial misconduct claims under only state law. *See Norris*, 902 S.W.3d at 442–45.

No. 15-70010

The TCCA concluded that only the first claim constituted error but declined to reverse Norris's conviction because "the trial court's instructions to disregard the prosecutor's comments were sufficient to cure error," as "[t]he prosecutor's comments were isolated, and the trial court promptly instructed the jury to disregard them." *Norris*, 902 S.W.2d at 442–43. The TCCA's determination was not unreasonable. The prosecutor's comments in context— and in light of the trial judge's limiting instructions, the length of the trial, and the overwhelming evidence of Norris's guilt—cannot be said to have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

Norris's second claim of prosecutorial misconduct, which he characterizes as "comment[ing] on Norris's appellate rights," was merely a reference to the "appellate record" in a discussion between the prosecutor and trial judge about admitting evidence. *Norris*, 902 S.W.2d at 443. There is no clear U.S. Supreme Court precedent that prohibits a prosecutor from making any mention of the court of appeals, and the TCCA was not unreasonable in concluding that there was no error.

Norris's third claim of prosecutorial misconduct asserts that the prosecutor invited the jury to consider the application of parole laws by arguing that Norris could not be rehabilitated because he had killed two more people while on parole for a prior murder for which he served jail time. *See Norris*, 902 S.W.2d at 443–44. The TCCA held that under Texas law, the prosecutor's argument "was a reasonable deduction from the evidence" and thus not error,[10]

---

[10] "Under Texas law, there are four areas of permissible jury argument: (1) summations of the evidence; (2) reasonable inferences or deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement." *Wilson v. Cockrell*, 75 F. App'x 983, at *10 (5th Cir. July 1, 2003) (citing *Wilson v. State*, 938 S.W.3d 57, 59 (Tex. Crim. App. 1996)).

and also that Norris waived any error by failing to object to the statement at trial. *Id.* at 444. The TCCA's determination was neither "contrary to" nor an "unreasonable application of" clearly established federal law, nor a decision "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Moreover, because the state court's decision rested on a state-law ground independent of the federal question and adequate to support the judgment— Texas's contemporaneous objection rule—we cannot review the federal question. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Allen v. Stephens*, 805 F.3d 617, 635 (5th Cir. 2015) ("[W]e have consistently upheld Texas's contemporaneous objection rule as an independent and adequate state ground that procedurally bars federal habeas review of a petitioner's claims." (internal quotation marks and alterations omitted)), *cert. denied*, No. 15-8641, 2016 WL 1134757, at *1 (U.S. May 23, 2016).

Norris's last two claims of prosecutorial misconduct were rejected by the TCCA because, in context, they were "proper pleas for law enforcement" and not invitations for the jury to convict Norris based on collateral considerations, as Norris argued. *Norris*, 902 S.W.2d at 445. The TCCA also held that Norris waived any error because he failed to object to either of the statements at trial and that, even if the statements were error, they were not so prejudicial that they could not have been cured by an instruction to disregard.[11] *Id.* The TCCA's determination was neither contrary to nor an unreasonable application of clearly established federal law nor a decision based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d); *see Ries v. Quarterman*, 522 F.3d 517, 531 (5th Cir. 2008) ("[a]ccepting the state court's

---

[11] Under Texas law, even if a criminal defendant fails to object to error, the error can still be grounds for reversal if the error was "so prejudicial that an instruction . . . could not have cured the error." *Norris*, 902 S.W.2d at 444.

conclusion based on state law" that the prosecutor's statement was a proper plea for law enforcement).

None of Norris's individual claims of prosecutorial misconduct is meritorious, and he cannot cumulate non-meritorious claims into a valid cumulative prosecutorial misconduct claim. *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005). A COA for Norris's cumulative prosecutorial misconduct claim is unwarranted. *See Slack*, 529 U.S. at 484–85.

**B.**

Norris's sufficiency-of-the-evidence argument fails because the evidence amply supported his capital murder conviction. We review the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In applying this standard, we look to "the substantive elements of the offense" as established by the state's criminal law. *Id.*

Under the applicable Texas law, Norris was guilty of capital murder if he "intentionally or knowingly caus[ed] the death of an individual" and murdered more than one person during the same criminal transaction. Tex. Penal Code Ann. § 19.03; *see Norris*, 902 S.W.2d at 437. On direct appeal, the TCCA concluded that there was sufficient evidence to support Norris's conviction of capital murder because, based on the evidence submitted at trial, a reasonable jury could easily find beyond a reasonable doubt that Norris "knowingly and intentionally" killed both Georgia and the baby. *Norris*, 902 S.W.2d at 436–37; *see id.* at 428–37. We agree. Norris admitted to intentionally killing Georgia. *See id.* at 436 & n.11. There was also ample evidence that Norris intended to kill the baby, notwithstanding his testimony

to the contrary. As the TCCA noted, Norris's pretrial statements to the police and others did not mention killing the baby by accident, the evidence at trial showed that Norris "inflicted the fatal wounds to the baby from a short distance with a high powered rifle that had to be recocked and reaimed between each shot," "[t]he baby was in full view of [Norris], and [he] admitted to seeing [the baby]," and "[f]our of the five shots [Norris] fired initially struck the baby, and most of the girlfriend's wounds were caused by fragments of bullets that first hit the baby." *Id.* at 436. This evidence was sufficient to support the jury's conclusion that Norris specifically intended to kill the baby.

Norris also argues that the evidence was insufficient to support his conviction based on an alternative theory of transferred intent and that, in any case, transferred intent cannot be used to prove capital murder under Texas law.[12] First, regarding whether transferred intent can be used to prove capital murder under Texas law—the state court already determined this issue, concluding that transferred intent can be used to prove capital murder in Texas. *Norris*, 902 S.W.2d at 437–38. "In our role as a federal habeas court, we cannot review the correctness of the state . . . court's interpretation of state law." *Ries v. Quarterman*, 522 F.3d 517, 531 (5th Cir. 2008) (internal alteration omitted).[13]

---

[12] The TCCA concluded that the verdict in Norris's case could have been based on either a specific-intent theory or on a transferred-intent theory. *Norris*, 902 S.W.2d at 437 ("[W]e cannot say the jury found appellant specifically intended to kill the baby based on the jury's affirmative answer to special issue one. The first special issue contains a type of 'transferred intent' provision since the jury could have affirmatively answered special issue one even if it believed appellant lacked the specific intent to kill the baby.").

[13] Norris relatedly argues that he was denied due process because the TCCA failed to grant him relief under the Texas case, *Roberts v. State*, which overruled a possible implication of *Norris v. State*, 902 S.W.2d 428. *See Roberts*, 273 S.W.3d 322, 330–31 (Tex. Crim. App. 2008), *abrogated in part by Ex parte Norris*, 390 S.W.3d 338, 341 (Tex. Crim. App. 2012), *and later abrogated in full by Granger v. State*, No. AP-77,017, 2015 WL 1875907 (Tex. Crim. App. Apr. 22, 2015) (en banc). The TCCA held in *Roberts* that insofar as *Norris* could be read to allow a capital murder conviction based on the murder of two people when the defendant had

Second, the state court's conclusion that the evidence was sufficient to support Norris's conviction if based upon a transferred-intent theory does not warrant habeas relief under § 2254(d).  *See Ex parte Norris*, 390 S.W.3d 338, 340–41 (Tex. Crim. App. 2012).  Reasonable jurists would not debate the district court's determination that, "[e]ven accepting Norris' claim that he never intended to kill the baby, th[e] evidence unquestionably supports a finding that he intended to kill Georgia but killed the baby inadvertently, making him liable under transferred intent, then committed a second discrete act under a newly formed intent to kill Georgia, resulting in Georgia's death." *Norris*, 2015 WL 1459187, at *8.  A COA is not warranted for these claims.

## C.

Norris argues that reasonable jurists could disagree with the district court's denial of habeas relief with respect to his claims that he was denied effective assistance of counsel and a fair trial when his trial counsel: (1) failed to preserve error as to the admission of Norris's pretrial statement to the police; (2) elicited from Norris the fact that he had a prior felony and received an eight-year sentence; (3) failed to object when the prosecutor elicited from Norris on cross-examination that he had only served a little less than three

---

a single intent to kill only one person, had no knowledge that the other person was there, and accidentally killed both the intended person and the other person—such as when a pregnant woman is intentionally murdered but the murderer is not aware that the woman is pregnant—that characterization of *Norris* was rejected and overruled.  273 S.W.3d at 330–31.  However, on review of Norris's state habeas petition, the TCCA affirmed the actual holding in *Norris*, despite *Roberts*, concluding that Norris's "separate instances of conduct occurred very close in time but were still sufficiently separate to involve separate intents" such that *Roberts* was inapposite to the facts of Norris's case.  *Ex parte Norris*, 390 S.W.3d at 341.  We cannot review the TCCA's determination of state law on federal habeas review. *Ries*, 522 F.3d at 531.

years of the eight-year sentence; and (4) failed to object to the admission of Norris's mother's pretrial statement.[14]

To prevail on a claim for ineffective assistance of counsel, Norris "must show that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and "must show that the deficient performance prejudiced [him]," which "requires showing that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Upon our review of the briefs and record, we conclude that Norris is not entitled to a COA on any of his ineffective-assistance claims because reasonable jurists would not debate the district court's determinations that Norris failed to established error under § 2254(d)'s standard for habeas relief and that, regardless, Norris cannot show *Strickland* prejudice in light of the overwhelming evidence of his guilt.

## V.

Based on the foregoing, we AFFIRM the district court's grant of habeas relief on Norris's *Penry* claim and DENY Norris's application for a COA.

---

[14] Norris also argues that the TCCA "never has adjudicated" his ineffective assistance of counsel claims because neither of the two TCCA opinions denying habeas relief discussed Norris's ineffective assistance claims. Under Supreme Court precedent, even if a state court's decision to deny habeas relief is unaccompanied by an explanation, the habeas petitioner still has the burden to show that there was no reasonable basis for the state court to deny relief. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011) (explaining that the deferential standard of § 2254(d) still applies even if the state court did not issue an opinion or explain its reasoning for denying habeas relief and that "[w]hen a federal claim has been presented to a state court and the state court has denied relief [without explanation], it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary"); *see Hoffman v. Cain*, 752 F.3d 430, 438–39 (5th Cir. 2014) (clarifying that the *Richter* presumption applies even when a state habeas decision writes on certain issues but is silent on other raised issues).